MARK MAVROFRIDES & others *vs.* E. C. BLANCHARD CO. INC. & another.

Essex.    January 11, 1972. — April 6, 1972.

Present: TAURO, C.J., CUTTER, QUIRICO, & HENNESSEY, JJ.

*Public Works.    Equity Pleading and Practice,* Master: report.    *Notice.*

In the absence of a report of the evidence in a suit in equity, findings by a master in a confirmed report must stand unless they appear as mutually inconsistent, contradictory, or plainly wrong.    [541]

Parties in a suit in equity were not prejudiced procedurally by an inadvertent statement in a master's certificate that he prepared his report in accordance with Rule 88 of the Superior Court (1954), which applies to auditor's reports, where it appeared that he complied in substantial respects with Rule 90, which governs masters' reports, and such parties did not show that the master failed to comply with Rule 90 in a way which was prejudicial to them.    [542–543]

In a suit in equity under G. L. c. 149, § 29, to enforce the statutory security for payment of a claim for materials supplied to a public construction project, an inadvertent error on the face of a master's report in stating that the last delivery of materials was made July 7, rather than July 27 as indicated in the statement of account annexed to the plaintiff's bill of complaint, did not harm the defendants where the final decree was based on the statement of account and figures contained therein and was in no way dependent on the inconsistent finding as to date of final delivery.    [543–544]

G. L. c. 149, § 29, as amended through St. 1964, c. 609, §§ 4, 5, providing that no claim for transportation charges should be valid unless written notice of the amount of the claim was given to the contractor principal on the statutory security bond within twenty days after delivery of materials, was intended to refer only to separate transportation charges and not to transportation charges included in the cost of materials furnished.    [544–545]

One who furnished materials in the construction of a school building for a regional school district complied with the requirement of G. L. c. 149, § 29, as amended through St. 1964, c. 609, §§ 4, 5, for filing of a sworn statement of claim for the materials with the "contracting officer or agent" of the district where, within the

ninety day period specified in the statute, the sworn statement was sent by registered mail and receipted for by an employee of the district and the district's superintendent of schools acknowledged receipt of the statement. [545]

BILL IN EQUITY filed in the Superior Court on July 12, 1968.

The suit was heard by *Lappin*, J., on a master's report.

*John N. Nestor* for the defendants.

*William Kiarsis, Jr.*, for the plaintiffs.

HENNESSEY, J. This is a bill in equity in which the plaintiffs seek to recover payment for gravel and fill furnished to Michael Vitale Construction Co., Inc. (Vitale), a subcontractor for E. C. Blanchard Co. Inc. (Blanchard). This case and three companion cases were referred to a master who found that Blanchard and its surety Maryland Casualty Company (Maryland) were liable to the plaintiffs in the amount of $20,685.86. The master's report was confirmed by an interlocutory decree of a judge of the Superior Court who entered a final decree ordering the defendants to pay the stated amount plus interest. The defendants appeal from the final decree. The evidence is not reported. In these circumstances, it is our duty to test the judge's actions on the standard that the master's findings of fact must stand unless they appear as mutually inconsistent, contradictory, or plainly wrong. *Gil-Bern Constr. Corp.* v. *Medford*, 357 Mass. 620, 622–623.

We state the facts as they appear in the master's report and in the plaintiffs' account which is incorporated by reference in the report. Pentucket Regional School District (Pentucket) contracted with Blanchard for the construction of a school building. Blanchard, as principal, and Maryland, as surety, furnished Pentucket with a performance bond as required by G. L. c. 149, § 29, as amended. About October 31, 1966, Blanchard contracted with Vitale to do the preliminary site work for the school. Vitale in turn engaged the plaintiffs to supply gravel borrow and fill for the site. The parties

agreed upon a price for borrow fill and borrow gravel loaded at the pit and also agreed to proceed on a "cash and carry" basis. The plaintiffs immediately commenced furnishing the material. However, because Vitale failed to make payment in accordance with these terms the agreed upon prices were raised on November 12, 1966, to sixty-five cents a yard for gravel fill loaded at the pit, to $1.45 a yard for borrow delivered to the construction site, and to $1.35 a yard for fill delivered to the site. It also appears that, on certain occasions, the plaintiffs charged Vitale for the use of a dump truck and operator. About May 1, 1967, the plaintiffs threatened to stop deliveries of gravel because Vitale failed to make any payments. At that time, a representative of Blanchard agreed to see that the plaintiffs would be paid. The plaintiffs were eventually paid $8,850. An unpaid balance of $20,514.31 existed at the time that this suit was commenced.

On September 11, 1967, the plaintiffs mailed a registered letter to Pentucket containing a sworn statement of account as required by G. L. c. 149, § 29. The postal receipt was signed by an employee of Pentucket and returned to the plaintiffs. About September 13, 1967, Pentucket's superintendent of schools acknowledged receipt of the statement and called it to the attention of the school committee at its next meeting. Because the school committee had no time stamp, no record was made of the receipt of the notice, nor was it entered in the minutes of the committee meeting. Finally, because the letter and statement were mislaid or misfiled, neither Blanchard nor Maryland was notified about them until June 28, 1968.

1. The master's certificate states that he prepared his draft report "in accordance with Rule 88 of the Superior Court Rules." Since this rule applies to auditors' reports rather than masters' reports, the defendants argue that they have been prejudiced procedurally. We do not agree. While it is true that the master's report in this case refers to Rule 88 of the Superior Court

(1954), it appears that the master complied in substantial respects with Rule 90 which governs masters' reports. The reference to Rule 88 seems to have been inadvertent in view of the fact that the present case was one of four related cases referred to the master, one of which was a law action in which the master sat as an auditor. This inadvertent reference aside, the defendants do not show that the master failed to comply with Rule 90 in a way which was prejudicial to them. On the contrary, it may be fairly inferred from the entire record including the dates involved that the defendants were afforded all the privileges to which they were entitled.

2. The defendants also argue that the master's finding as to the date on which the last delivery was made is wrong in view of his other findings and that this error resulted in his awarding the plaintiffs a greater amount than was actually due them. We disagree. "[I]t is the duty of this court on appeal from the final decree to see that the final decree is such as the law requires upon the facts found by the master." *Foot* v. *Bauman*, 333 Mass. 214, 219. In the present case, the master found "that the . . . [plaintiffs] did furnish gravel fill, labor and materials as set forth in the [b]ill annexed to the . . . [plaintiffs'] [b]ill of [c]omplaint." The bill referred to indicates that the last delivery was made on July 27, 1967. The master, however, stated in his report that the last delivery was made on July 7, 1967. While there is, therefore, an error on the face of the report, we believe that the error was inadvertent and has not been shown to have harmed the defendants. "Logically it would seem that the errors of the master did not affect the final decree." *Foot v. Bauman, supra,* at 219. The final decree ordering them to pay $20,685.86 plus interest was clearly based on the statement of account and the figures contained therein and was in no way dependent on the inconsistent finding as to the date of final delivery. Also, the defendants' statement that the master erroneously found that the "Mavrofrides transported material during the period on or about October

31, 1966, to on or about November 12, 1966," is not borne out by the report itself which merely states that the plaintiffs began furnishing gravel on October 31, 1966, and that the gravel was transported, at no specified time, by, among others, the plaintiffs' trucks.

3. The defendants finally argue that the plaintiffs failed to comply with G. L. c. 149, § 29, in that, in the present case, the statute requires that (a) notice of claim for transportation charges be given within twenty days to the contractor principal, and (b) a sworn statement of claim to the contracting officer of Pentucket within ninety days.

There is no doubt that a substantial portion of the plaintiffs' claim was for transportation charges from the gravel pit to the construction site. Similarly, there is no doubt that the Legislature by amending § 29 intended that notice of claims for transportation charges should be presented to the principal contractor within twenty days. St. 1962, c. 696. The issue presented here, however, is whether charges for material that in some instances include transportation costs, require, at least for their transportation charge component, a separate twenty day notice to the principal contractor. We conclude that they do not.

There is nothing in the language of § 29 to indicate that the Legislature intended a twenty day notice to the principal contractor for anything but separate transportation claims such as charges from a trucking firm or a railroad. Bills from these latter type carriers might not readily come to the principal contractor's attention, especially if the trucker or railroad were engaged by a subcontractor and had no contact with the principal contractor. In this case, however, the report indicates that, although the plaintiffs were hired by Vitale, Blanchard was aware of the arrangement between the plaintiffs and Vitale, and, had, in fact, assured the plaintiffs of payment. We also observe that, in connection with the ninety day notice to the public authority, § 29 provides that such notice shall be filed "after the claimant

ceases to perform labor or furnish labor, materials, appliances and equipment or transportation." The inclusion of the word "transportation" in this clause supports our conclusion that the Legislature intended the twenty day notice provision to refer only to separate transportation charges and not to a situation in which the transportation charge is included in the cost of the material.

The defendants also argue that there was no evidence that the contracting officer or agent of Pentucket received the required sworn statement of claim within ninety days. The master found that an employee of Pentucket signed a registered mail receipt for a letter containing the plaintiffs' statement of claim. The letter was mailed by the plaintiffs on September 11, 1967. About September 13, 1967, Pentucket's superintendent of schools acknowledged receipt of the letter. From these facts, the master was warranted in concluding that the requirements of the statute had been met. See *Gil-Bern Constr. Corp.* v. *Medford,* 357 Mass. 620, 622–623.

*Decree affirmed with costs of appeal.*