JOSEPH BARBOZA & others[1] *vs.* AETNA CASUALTY AND
SURETY COMPANY.

Plymouth. January 17, 1984. — June 29, 1984.

Present: BROWN, KASS, & WARNER, JJ.

*Bond,* Public works. *Public Works,* Statutory bond. *Contract,* Building
contract.

A supplier of gravel to a construction site was not entitled to recover under
a statutory payment bond for gravel delivered under an agreement be-
tween the supplier and a subcontractor, where the supplier had not given
timely written notice of the claim to the general contractor as required
by G. L. c. 149, § 29, and where a subsequent agreement between the
supplier and the general contractor under which the supplier continued
delivering gravel, with a separate set of invoices and at an increased
price, did not amount to a continuation of the original agreement with
the subcontractor so as to preserve the supplier's rights under the bond.
[325-328]

CIVIL ACTION commenced in the Superior Court on June
12, 1975.

A motion for summary judgment was heard by *Byron,* J.

*Dennis J. Conry* for the plaintiffs.
*Joel M. Sowalsky* for the defendant.

KASS, J. In order to prevail, the plaintiffs, doing business
as Barboza Brothers (Barboza), suppliers of gravel, must estab-
lish that their agreement with the general contractor embraced
deliveries made — but not paid for — under a contract earlier
made with a subcontractor and that the earlier agreement with
the subcontractor had ceased to have legal significance for
purposes of securing benefits of a payment bond obtained in
accordance with G. L. c. 149, § 29.

[1] Thomas Barboza and Vincent Barboza.

The governing facts, developed by pleadings, affidavits, and a deposition filed in connection with a motion for summary judgment, follow. The Fairhaven Housing Authority engaged Liberty Contractors Co., Inc. (Liberty), as general contractor to build housing for elderly persons. Liberty let a subcontract to E. G. Mondor Construction Corp. (Mondor) for excavation and site work. Mondor agreed orally with Barboza for the delivery of gravel to the job site.

From February 19, 1974, through June 13, 1974, Barboza delivered gravel to the project site on an "as needed" basis and billed the deliveries by separate invoices to Mondor. As of June 13, 1974, Mondor had run up unpaid bills of $13,382.60 with Barboza, and Joseph Barboza, one of the plaintiffs, informed Mondor it would ship no more gravel to the job unless Barboza should receive payment in full for material already delivered. Joseph Barboza subsequently told Liberty that it was suspending gravel deliveries and why it was doing so. A responsible officer of Liberty told Joseph Barboza that if Barboza should resume shipments to the project site, Barboza would be paid by Liberty for the prior deliveries[2] to Mondor. As for future deliveries, they were to be billed directly to Liberty.

Barboza resumed deliveries on July 1, 1974, again on an "as needed" basis, and rendered bills to Liberty. The price changed. Barboza, which had charged Mondor $2.10 per cubic yard, billed Liberty, without notice of an increase, at $2.50 per cubic yard, a circumstance which later may have dampened Liberty's zeal in helping Barboza to recover the Mondor arrearage. Liberty paid in full for the gravel shipped for its account, the last shipment having been made on September 18, 1974. Neither it nor Mondor paid the pre-July 1st amount which Mondor owed, nor did Barboza send a bill to Liberty for that

---

[2] The evidentiary material is conflicting as to what exactly it was that Liberty promised. Liberty says that it told Barboza it would see that Barboza was paid for the prior deliveries to Mondor. Because the case was decided below adversely to Barboza on a motion for summary judgment, we have chosen Barboza's version of the facts, which, not surprisingly, is more favorable to Barboza.

amount. Barboza made an oral demand upon Liberty for payment of the Mondor arrearage on about October 1, 1974. On December 2, 1974, Barboza mailed a written notice of default, purportedly "in accordance with the requirements of [the payment] bond" furnished by Liberty and written by Aetna Casualty and Surety Company.

About six months later, on June 12, 1975, Barboza filed an action in the Superior Court against Liberty and Aetna.[3] Both made motions for summary judgment. Liberty's was denied, but Aetna's was allowed and, pursuant to a determination under Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), that there was no just reason for delay, a judgment entered dismissing the action as to Aetna. Among the defendants, therefore, only Aetna is involved in this appeal.[4]

Under G. L. c. 149, § 29 (as amended through St. 1972, c. 774, § 5), a claimant against the payment bond required by that statute (see the first paragraph of § 29), if the claim is based on a relationship with a *subcontractor,* must give a written notice of claim to the *general contractor* "within sixty-five days after the day on which the claimant last performed the labor or furnished . . . materials . . ." (see the third paragraph of § 29). As to its contract with the subcontractor, Mondor, therefore, Barboza must have given the statutory notice no later than August 17, 1974. See, e.g., *Massachusetts Gas & Elec. Light Supply Co.* v. *Rugo Constr. Co.,* 321 Mass. 20, 23 (1947), applying an earlier version of the same statute. See also *Continental Bronze Co.* v. *Salvo & Armstrong Steel Co.,* 8 Mass. App. Ct. 799, 800 & n.2 (1979). No written notice of any kind respecting gravel shipments was given until December 2, 1974.

Barboza recognizes it cannot have the benefit of the payment bond on the basis of the subcontract with Mondor and stakes

---

[3] Barboza also named Mondor and the Fairhaven Housing Authority as defendants. The parties entered a stipulation of dismissal as to the Fairhaven Housing Authority. We are able to deduce from the docket that Mondor never entered an appearance and that the action against it was not pressed.

[4] The Superior Court docket discloses that a jury later returned a verdict of $13,412 for Barboza against Liberty.

its claim instead against the general contractor, Liberty, and upon the second paragraph of § 29. Under that paragraph a claimant "having a contractual relationship with the contractor principal furnishing the bond [i.e., the general contractor] . . . shall have the right to enforce [its] claim" by filing a complaint "within one year after the day on which [the] claimant last . . . furnished the . . . materials . . . included in the claim." G. L. c. 149, § 29. All of the material included in Barboza's claim relates to gravel shipped for Mondor's account. To press that claim against Liberty, Barboza theorizes that its agreement with Liberty changed the character of Barboza's contract with Mondor, the subcontractor, into one continuous contract with Liberty, the general contractor. The Mondor subcontract, under the plaintiffs' approach, is swallowed up in the contract with Liberty.

So to obliterate the Barboza-Mondor agreement requires us to overlook the following aspects of the record: (a) one set of invoices — for the deliveries through June 13, 1974 — was addressed to Mondor, another quite separate set, addressed to Liberty, covered the post-July 1st deliveries; (b) the Liberty set of invoices contained no charges for gravel previously delivered for Mondor's account; (c) the price per cubic yard charged to Liberty was different (by twenty percent) from the price charged to Mondor. These are indicia of separateness as cogent as those at play in *D & P Equip. Corp.* v. *Harvey Constr. Co.,* 5 Mass. App. Ct. 851 (1977). There, D & P, a supplier of equipment and labor to a subcontractor, Hawthorne, on an "as needed" basis, arranged to furnish the equipment and services, "as needed," to the general contractor, Harvey Construction Co., when Hawthorne failed. D & P's affidavits on summary judgment were to the effect that Harvey "took over" D & P's contract with Hawthorne. In the *D & P* case the supplier gave timely notice to the general contractor of its claim under G. L. c. 149, § 29, third par., but did not, as required by the statute, file an action in court within one year after the day on which it last provided materials or services to the subcontractor. Instead it billed the general contractor directly — at a different price — for work and materials furnished after

termination with the subcontractor, Hawthorne, and then brought an action on the bond in the Superior Court within one year of finishing with the general contractor on the premise that the contractual relationship with the subcontractor and the general contractor was to be regarded as a continuous one. The action on the subcontract in the *D & P* case should have been brought by September 19, 1975, but was not filed until November, 1975. In the course of affirming the allowance of a motion for summary judgment we observed that "[w]hile the plaintiff may have acquired 'a contractual relationship' with Harvey for purposes of the second paragraph of § 29 *after* September 19, that circumstance, standing alone, is not a sufficient ground for permitting the second and third paragraphs 'to be combined in the piggy-back fashion attempted by the plaintiff'" (citation omitted, emphasis original). *D & P Equip. Corp.* v. *Harvey Constr. Co.*, 5 Mass. App. Ct. at 851. We saw no support for "the conclusion that the equipment rented directly to Harvey . . . was in fulfillment of any contractual obligation theretofore owed by the plaintiff to Hawthorne . . . or in furtherance of any arrangement with Hawthorne amounting to continuous employment . . . ." *Ibid.* As in *Peerless Unit Ventilation Co.* v. *D'Amore Constr. Co.*, 283 Mass. 121, 125 (1933), "work done under a new and independent arrangement, made after the original contract or continuing employment has ended . . . does not set the time running so as to preserve a lien for the earlier work." Contrast *Mavrofrides* v. *E. C. Blanchard Co.*, 361 Mass. 540 (1972), which held a general contractor (not a surety) liable for a supplier's gravel shipments to a failed subcontractor, but in which the issue of the separateness of the contracts was not raised. Compare *Warren Bros. Roads Co.* v. *Joseph Rugo, Inc.*, 355 Mass. 382 (1969), in which written arrangements between a sub-subcontractor and a general contractor covered work in the original subcontract and in which, in any event, the notice of claim after termination of the subcontract was well within the statutory period. *Id.* at 386.

Cases applying § 29 and predecessor statutes have said over and over that the statute should be given a broad or liberal con-

struction to accomplish its intended purpose of affording security to subcontractors and materialmen on public works. *American Air Filter Co.* v. *Innamorati Bros., Inc.,* 358 Mass. 146, 150 (1970), and cases cited. *Manganaro Drywall, Inc.* v. *White Constr. Co.,* 372 Mass. 661, 664 (1977). *Floors, Inc.* v. *B. G. Danis, Inc.,* 7 Mass. App. Ct. 356, 358 (1979), *S.C.,* 380 Mass. 91 (1980). It ill serves the statutory scheme, however, and would stimulate litigation, if we obscured the relatively simple statutory prerequisites upon which all parties in public contracting, including the sureties, presumably rely. In the case of a materialman's or sub-subcontractor's claim against a payment bond for what is due from a subcontractor, that prerequisite is to give a *written* notice of claim to the general contractor within sixty-five days after the day on which the claimant last supplied work or materials. That notice is to state with substantial accuracy the amount claimed and the name of the party to whom the work and materials were furnished. G. L. c. 149, § 29. The notice requirement can be satisfied by a brief letter from the supplier to the contractor which will make unambiguous the claimed rights of all. *United States ex. rel. John D. Ahern Co.* v. *J. F. White Contracting Co.,* 649 F.2d 29, 32 (1st Cir. 1981), construing the Miller Act, 40 U.S.C. § 270(b)(a) (1970), an analogous Federal statute. We do not think the requirements of § 29 can be altered by private agreement against a surety not shown to have waived compliance with statutory requirements. *Pioneer Indus.* v. *Gevyn Constr. Corp.,* 458 F.2d 582, 585 (1st Cir. 1972). See *Taborsak* v. *Massachusetts Bonding & Ins. Co.,* 289 Mass. 8, 12-13 (1935); *Hartford Acc. & Indemn. Co.* v. *Casassa,* 301 Mass. 246, 252 (1938). Compare *Worcester Air Conditioning Co.* v. *Commercial Union Ins. Co.,* 14 Mass. App. Ct. 352, 357 (1982).

We have expressed our conclusions about the contractual status of Barboza and Liberty in the context of Barboza's claim against the payment bond posted in accordance with § 29. We intimate no view as to whether Barboza may maintain a simple contract action against Liberty on the basis of an oral agreement which required Liberty to pay the amount due on the Mondor

account. Because we do not decide that question, it is unnecessary to consider whether Liberty's alleged agreement to discharge Mondor's indebtedness was barred by the Statute of Frauds. G. L. c. 259, § 1, Second. Cf. *M. J. Pirolli & Sons* v. *Massachusetts Equip. & Supply Corp.*, 9 Mass. App. Ct. 863 (1980).

Against the possibility that it might lose on its unitary contract theory, Barboza posits the argument that Aetna, as Liberty's surety, is estopped to deny Liberty's alleged promise to pay for the gravel shipped for Mondor's account. Estoppel presupposes reliance upon a representation and a consequent change of position. *Tull* v. *Mister Donut Dev. Corp.*, 7 Mass. App. Ct. 626, 631 (1979). Barboza's pleadings and affidavits make no assertion that Barboza forebore to give a § 29 notice because of anything Liberty did or said. We need inquire no further into the estoppel argument.

On the undisputed material facts, summary judgment was correctly entered as to the defendant Aetna Casualty and Surety Company. See *Federal Deposit Ins. Corp.* v. *Csongor*, 391 Mass. 737, 740 (1984).

*Judgment affirmed.*