## Vernon Insurance, etc., Company v. Maitlen.

[No. 19,808.    Filed April 25, 1902.]

Insurance. — Arbitration.—Condition Precedent. — An insurance policy as a condition precedent to an action thereon provided for the arbitration of the amount of the loss by appraisers, assisted, if necessary, by an umpire. The complaint in an action on the policy alleged that a demand was made by the company for the appointment of appraisers, and that each party selected an appraiser. Failing to agree, the two appraisers made an effort to select an umpire. Several were proposed by each appraiser, but none was acceptable to both. Held, that the complaint does not show a waiver of or compliance with the condition respecting arbitration, and that such condition still stands as the binding agreement of the parties.

From Adams Circuit Court; D. D. Heller, Judge.

Action by Richard B. Maitlen against the Vernon Insurance and Trust Company on an insurance policy. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court, under §1337u Burns 1901. Reversed.

G. A. Deitch and C. J. Lutz, for appellant.
F. H. Snyder, for appellee.

Dowling, J.—This action was commenced in the Jay Circuit Court, the venue being changed afterwards to Adams county. The suit was upon a policy of fire insurance, which contained, among others, the following conditions: "This company shall not be liable beyond the actual cash value of the property at the time any loss or damage occurs, and the loss or damage shall be ascertained or estimated according to such actual cash value, with proper deduction for depreciation, however caused, and shall, in no event, exceed what it would then cost the insured to repair or replace the same with material of like kind and quality. Said ascertainment or estimate shall be

made by the insured and this company, or, if they differ, then by appraisers, as hereinafter provided, and, the amount of loss or damage having thus been determined, the sum for which this company is liable pursuant to this policy, shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of loss have been received by this company in accordance with the terms of this policy.    *    *    *    And the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when an appraisal has been required.    In the event of disagreement as to the amount of loss, the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire.    The appraisers, together, shall then estimate and appraise the loss, stating, separately, sound value and damage, and, failing to agree, shall submit their differences to the umpire, and the award in writing of any two shall determine the amount of such loss.    The parties thereto shall pay the appraisers respectively selected by them, and shall bear equally the expense of the appraisal and umpire."

It is admitted by the appellee that the provisions of the policy respecting arbitration of the amount of the loss are conditions precedent, and no question is made as to their validity; but it is contended that there was a waiver of these conditions by the company, and the facts supposed to constitute such waiver are stated in the complaint, substantially as follows:    It is alleged that the parties differed touching the amount of the loss, and that the company demanded an arbitration to determine the sum for which it was liable; that the appellee then selected one Joseph Zehner, of Dunkirk, Indiana, and that the company selected A. N. Hadley of Indianapolis, Indiana; that these appraisers inspected

the property, but were unable to agree upon the amount of
the loss, and failed to determine the same; that Hadley pro-
posed the names of J. W. Hensly, of Indianapolis, Indiana,
———— Teeter, of Hagerstown, Indiana, and ———— Cro-
zier, and ———— Ball, of Muncie, Indiana, together with
the names of various other persons, unknown to appellee,
for the position of umpire; that all these persons resided
at great distances from Dunkirk, Indiana, near which place
the property insured was situated, and were unknown to
said Zehner, and to the appellee, and for these reasons were
rejected by said Zehner; that said Zehner then proposed
the names of James Ashcraft and William Teague, of Dun-
kirk, Indiana, and ———— Runyon, of Redkey, Indiana,
who resided near to or in the locality where the property
insured was situated, and were acquainted with the value
of such property in that neighborhood; that Hadley, un-
justly and unreasonably, refused to agree to the appoint-
ment of any one of the persons so named by Zehner, and
insisted on the appointment of Hensly, or some person liv-
ing outside of Jay county, and remote from the locality of
the property insured; that said appraisers separated with-
out agreeing on said loss, and without agreeing on an um-
pire; that said Hadley and the company still insist on the
selection of Hensly, and no other person as such umpire,
and that said company refused to adjust said loss, or pay
the same. The complaint contains, also, a general averment
that the appellee has performed all the conditions of the
said policy on his part to be performed.

A demurrer to the complaint was overruled, and the ap-
pellant answered in two paragraphs, the first being a gen-
eral denial, and the second stating a defense founded upon
a clause of the policy providing for an apportionment of
the loss among the several insurers, where the property was
insured by more than one company. To the second para-
graph of answer, a reply in denial was filed. The case was
tried by a jury, who returned a verdict assessing the dam-

Vernon Ins. Co. *v.* Maitlen.

ages of the appellee at $590. Appellant moved, unsuccessfully, for a new trial, and judgment was rendered on the verdict. Errors are assigned upon the rulings on the demurrer to the complaint, and on the motion for a new trial.

The only question upon the complaint is whether its averments show a waiver by the appellant of the condition respecting arbitration of the amount of the loss. It appears that a demand was made by the appellant for the appointment of appraisers of the loss, and that each party selected an appraiser. Failing to agree, the two appraisers made an effort to select an umpire. Several persons were proposed by each appraiser, but none was acceptable to both. The appraiser chosen by appellee insisted that the umpire should be a resident of Dunkirk, near which the property insured was situated, or of the immediate vicinity of that town; the other appraiser demanded that the umpire should be taken from Indianapolis, or some point not in the immediate neighborhood of Dunkirk. The appraisers seem to have been equally honest, and equally unreasonable in their views concerning the proper qualifications of an umpire. Those views proved to be irreconcilable. It cannot be said that one of the parties, more than the other, was responsible for the failure to agree upon an umpire. We cannot attribute bad faith or perversity to either. We must ascribe their failure to agree, rather, to the peculiarities of the two appraisers. Other appraisers, if chosen, may easily decide the amount of the loss, or, in case of a difference of opinion on this point, may promptly select an umpire.

The condition of the policy providing for an estimate of the amount of the loss by appraisers, assisted, if necessary, by an umpire, still stands as the binding agreement of the parties, and it has neither been complied with nor waived. Upon the final disagreement of the appraisers Zehner and Hadley, the parties should have selected other appraisers, and such appraisers, in case they disagreed touching the amount of the loss, should have chosen an umpire.

The question raised by the demurrer to the complaint has very recently been determined by the supreme court of Iowa, the supreme court of Ohio, and the court of appeals of New York, and the exhaustive opinions in these cases leaves nothing more to be said upon the point decided.

In *Westenhaver* v. *German-American Ins. Co.* (Iowa), 84 N. W. 717, the supreme court of Iowa said: "It appears from the evidence that an adjuster representing the defendant and another company called on the plaintiffs just after the fire and attempted to adjust the loss. Failing in this, he served notice on the plaintiffs to put the stock in order, separate the damaged from undamaged, and make complete inventory of the same, in accord with the terms of the policy, and that submission of the amount of loss to appraisers was required. Plaintiffs were also informed by this notice that defendant would at once select an arbitrator, and they were requested to name a time when, and place where, the appraisers so appointed could meet the one selected by plaintiffs. Complying with the statement, defendant selected one Larson, a merchant of wide experience, living at Crystal Lake, Minn., about 30 miles distant from Buffalo Center [where the fire occurred]. Plaintiffs selected one Hubbard, a livery stable keeper in the town of Buffalo Center, who was the father of plaintiff's cashier. Shortly after the service of the notice, these appraisers met at Buffalo Center and attempted to choose an umpire. * * * They each submitted a list of names to the other from which to select an umpire. The appraiser appointed by the defendant [insurance company] presented a list of twenty-two names of merchants and business men living in Forest City, Britt, Wesley, Garner, Clear Lake, Mason City, Belle Plaine, Marshalltown, Des Moines, Correctionville, Sioux Rapids, Ida Grove, and Buffalo Center, Iowa, and Minneapolis, and Blue Earth, Minn. So far as shown, they were all men of excellent character. The arbitrator selected by plaintiffs objected to those who lived in the im-

mediate vicinity of Buffalo Center, because competitors of
plaintiff, and to those who lived more distant, as at Mar-
shalltown and Des Moines, as too distant.  Another was
rejected because he was a banker.  There was no showing
that Larson was actuated by any other motive than to secure
an impartial umpire in presenting his list.  Hubbard pre-
sented a list of twelve names of merchants and business
men residing at Clear Lake, Belmond, Buffalo Center, Gar-
ner, and Algona, Iowa, and Winona and Blue Earth, Minn.,
and Columbus, Prescott, and Delavan, Wis., and Rockford,
Ill.  One of them was an old partner of Hubbard, and an-
other a partner of this partner, and one or both had had
losses from fire, and difficulties with insurance companies.
Another was an old time friend of Hubbard, and the land-
lord of the hotel where the plaintiffs and many of their em-
ployes boarded.  Another had had difficulty in adjusting an
insurance loss, and some were non-residents of the state, and
were unknown to either of the appraisers.  Many of the
names were suggested by plaintiffs or their employes.  It
also appeared that Hubbard constantly counseled with and
was largely directed by plaintiffs in his attempt to secure
an umpire.  These facts are mentioned, not for the purpose
of showing fraud or bad faith, but as evincing a purpose on
the part of the plaintiffs to derive every advantage possible
in the arbitration.  There is, as we have said, no evidence
that Larson was acting on the immediate suggestion of the
defendant [insurance company] or its agents; and, so far
as he was actuated by no other motive than to secure a fair
and unprejudiced umpire, even if he did not show the best
of judgment, the defendant is not to be held responsible for
his mistakes.  There is little doubt that the appraisers at-
tempted to agree, and the trial court, no doubt, found that
they would have agreed on some of the names presented by
Larson, had not plaintiffs objected thereto.  We are con-
tent to hold that this is as much as can be claimed from the
evidence,—that after an honest and earnest attempt the

arbitrators failed to agree, and that defendant [insurance company] was in no manner responsible for their disagreement. What, then, is the law applicable to such a state of facts? * * * There is no evidence from which a jury would be warranted in finding that the arbitration failed because of the perverse conduct or want of good faith of the defendant or its adjuster. Plaintiffs and their appraiser were as much at fault as, if not more than, the defendant; * * * Ascertainment of the amount of loss by appraisement was a condition precedent to a right of action, and, if the appraisers selected failed to agree on a third, this does not in itself justify a suit for the amount of the loss. In the absence of bad faith or acts intended to defeat arbitration on the part of the insurer, the plaintiff must propose the selection of other arbitrators, to the end that an award may be agreed upon, and the basis for action determined. *Davenport* v. *Long Island Ins. Co.,* 10 Daly 535; *Altman* v. *Altman,* 5 Daly 436; *Caledonian Ins. Co.* v. *Traub,* 83 Md. 524, 35 Atl. 13; *Carroll* v. *Girard Ins. Co.,* 72 Cal. 297, 13 Pac. 863; *Levine* v. *Lancashire Ins. Co.,* 66 Minn. 138, 68 N. W. 855. Following this rule, it was plaintiffs' duty, when the appraisers first selected failed to agree, through no fault of either of the parties, to select a new appraiser, in order that the amount of their recovery should be fixed. They could not arbitrarily proceed to set aside the agreement for arbitration and sue for the amount of loss; for the defendant agreed to pay the amount found due by the appraisers, and, in the absence of fraud, bad faith, or culpable neglect, or other conduct amounting to a refusal to proceed with arbitration, the defendant had the right to stand on its contract rights."

In *Silver* v. *Western Assurance Co.,* 164 N. Y. 381, 58 N. E. 284, the court of appeals of New York said: "The contention of the plaintiff in this case is that the evidence is of such a character as to support a finding by the jury that the defendant was acting in bad faith, with the purpose of

defeating the real object of the clause; that, therefore, the plaintiff is absolved from compliance with it, and hence that the refusal to dismiss the complaint was not error. The arbitration agreement was signed by both parties, and by it Jacob Jacobson was appointed appraiser on the nomination of the plaintiff, and Adolph Friedman, on behalf of the defendant, the agreement bearing date December 14, 1895. From that date until the 28th day of January following, at which time this action was commenced, it does not appear that the plaintiff, his appraiser or his attorney, took any action whatever looking to the making of the appraisement for which the agreement undertook to provide. The defendant's appraiser and attorney seemed to have taken all the steps that were taken towards bringing about an appraisement. On January 6th, Adolph Friedman, defendant's appraiser, addressed to the plaintiff at the place where the fire occurred a registered letter, but it was returned, having stamped across the face of it in red ink, 'Returned to sender. Cannot be found by N. Y. P. O. Jan. 9, 1896.' It also bore in writing the words, 'Removed. No address. W. R. 164.' * * * No evidence has been given tending to show that the defendant was not acting in good faith when it executed the agreement for appraisement. There was a delay of some days, covering in part the Christmas holidays, after the agreement was executed, before defendant's appraiser undertook to get in communication with the plaintiff's appraiser, but it does not appear that this delay · was prompted by, or known to the defendant. On the other hand, there was still greater delay on the part of the plaintiff's appraiser, upon whom rested precisely the same measure of obligation to proceed promptly with the appraisement as devolved upon the defendant's appraiser. Not only did the plaintiff's appraiser omit, then or later, to perform the duties of an appraiser, but the plaintiff also seems to have omitted suggesting to his appraiser, to the defendant, or its appraiser, that expedition was desired for any reason. It

is the 'duty of each party to act in good faith to accomplish the appraisement', * * * it is just as much the duty of one party as of the other, and, hence, it is difficult to discover the logic of the contention that the assured and his appraiser could sit still from the time of making of the agreement until the commencement of the action, and then deprive the other party, whose appraiser and attorney did take some action towards carrying out the agreement, of the benefit of the agreement on the ground that its object had not been made effective by an appraisement. We think there was no evidence upon which the jury could base a finding that the plaintiff should be absolved from compliance with the agreement to appraise because the defendant in bad faith sought to defeat the real object of the provision in the policy providing for an appraisement of damages."

In *Phenix Ins. Co. v. Carnahan,* 63 Ohio St. 258 (six cases), 58 N. E. 805, the supreme court of Ohio held that the right to demand an appraisal was a distinct contractual right, and that the motive which prompted either party to the policy to assert that right was not a matter of inquiry for the court or jury.

Again it is said, in *Uhrig v. Williamsburg City Fire Ins. Co.,* 101 N. Y. 362, 365, 4 N. E. 745: "Under the arbitration clause, it was the duty of each party to act in good faith to accomplish the appraisement in the way provided in the policy, and if either party acted in bad faith so as to defeat the real object of the clause, it absolved the other party from compliance therewith; and if either party refused to go on with the arbitration, or to complete it, or to procure the appointment of an umpire so that there could be an agreement upon an appraisal, the other party was absolved. A claimant under such a policy cannot be tied up forever without his fault and against his will by an ineffectual arbitration."

The cases of *Rademacher v. Greenwich Ins. Co.,* 75 Hun

83, 27 N. Y. Supp. 155; *Brock* v. *Dwelling-House Ins. Co.*, 102 Mich. 583, 61 N. W. 67, 26 L. R. A. 623, 47 Am. St. 562; *Hickerson* v. *German-American Ins. Co.*, 96 Tenn. 193, 33 S. W. 1041, 32 L. R. A. 172; *McCullough* v. *Phenix Ins. Co.*, 113 Mo. 606, 21 S. W. 207, are not inconsistent with the views we have expressed, nor with the principles stated in the cases from which we have quoted.

The general averment of the complaint that the appellee had performed all the conditions of the policy and contract on his part to be performed was not sufficient to cure the infirmities of that pleading in regard to the failure to procure an appraisement of the property as provided for in the policy sued upon. The complaint disclosed that no such appraisement had been made. It did not sufficiently aver that it had been waived either directly or by any misconduct on the part of the appellant.

It is clear, upon reason and authority, that the complaint failed to show a compliance by the appellee with a valid condition of the policy of insurance, which, by the express terms of that contract, was made a condition precedent to any right to maintain an action upon the policy, or a legal excuse for his failure to comply with such condition. The court erred in overruling the demurrer to the complaint. None of the questions in regard to the errors of the court in admitting evidence is likely to arise upon another trial, and we need express no opinion upon them.

What has been said in this opinion sufficiently indicates our views upon the several instructions given and refused and made grounds for the motion for a new trial.

For the error of the court in overruling the demurrer to the complaint, the judgment is reversed, with instructions to sustain the demurrer, and for further proceedings in accordance with this opinion.