**LIMBACH COMPANY, Plaintiff, Appellee,**

v.

**GEVYN CONSTRUCTION CORPORA-TION, Defendant, Appellant.**

No. 76–1247.

United States Court of Appeals, First Circuit.

Argued Sept. 9, 1976.

Decided Oct. 20, 1976.

McENTEE, Circuit Judge.

In 1970 Middlesex County terminated the Gevyn Construction Corporation's contract to build a courthouse in Cambridge, Massachusetts. This case marks yet another step in the protracted litigation stemming from that event.[1]

After the County's action, Gevyn, the general contractor, successfully demanded arbitration of all claims flowing from the contract termination.[2] In addition to Gevyn, parties to the consolidated arbitration proceeding were the County, which Gevyn accused of wrongful breach, and Gevyn's subcontractors, including appellee Limbach Company. Limbach sought damages for breach of its subcontract which was terminated as a result of the cancellation of the principal contract. Gevyn claimed damages from the County; alternatively, in the event Gevyn were held liable to the County, Gevyn sought indemnification from its subcontractors.

In 1971, after arbitration had begun, Limbach sued Gevyn in Superior Court in Massachusetts to preserve its claim under Mass.Gen.Laws c. 149, § 29. Limbach filed a "petition in equity" seeking to recover from Gevyn or its surety on the bond which that statute requires for the benefit of subcontractors. Gevyn removed the case to the district court on grounds of diversity of citizenship, and the proceeding was stayed pending the outcome of the consolidated arbitration.

By early 1976 the arbitration hearings had not been completed.[3] The district court summoned the attorneys for all parties to suits that had been stayed pending the outcome of the consolidated arbitration to explore ways of removing the cases from the

Cornelius J. Moynihan, Jr., Boston, Mass., with whom Leslie A. Hynes, Hynes & Diamond, New York City, Peabody, Brown, Rowley & Storey, Boston, Mass., were on brief, for defendant-appellant.

Francis H. Fox, Boston, Mass., with whom James F. O'Brien and Bingham, Dana & Gould, Boston, Mass., were on brief, for plaintiff-appellee.

Before COFFIN, Chief Judge, CLARK,* Associate Justice, U. S. Supreme Court (Ret.), and McENTEE, Circuit Judge.

---

* Sitting by designation.

1. E.g., Pioneer Industries v. Gevyn Construction Corp., 458 F.2d 582 (1st Cir. 1972); County of Middlesex v. Gevyn Construction Corp., 450 F.2d 53 (1st Cir.), cert. denied, 405 U.S. 955, 92 S.Ct. 1176, 31 L.Ed.2d 232 (1972).

2. In 1971, this court affirmed the district court's stay of judicial proceedings and order that the County submit to arbitration. County

of Middlesex v. Gevyn Construction Corp., supra.

3. The record indicates that "there have been conducted 158 hearings, there is a stenographic transcript of over 35,000 pages and in excess of 3,000 exhibits have been received and testimony of almost 100 witnesses have been heard by the Arbitrators in this case involving over 20 parties."

court's docket. The judge expressed concern that the cases had continued on the docket for so long, stating that they were "giving this Court a very black eye, in terms of its statistical median time for the pendency of civil cases . . . ." While other litigants were able to agree on some method for disposing of their cases, Limbach and Gevyn were not. After a fruitless exploration of possibilities such as a stipulated dismissal without prejudice or an agreed remand to state court, the judge on April 2, 1976 ordered that an award be entered as to Limbach's claim in the consolidated arbitration proceeding within 60 days.[4] This appeal followed.

Appellant Gevyn challenges the propriety of the judge's order, on various grounds. At this time, however, we need not reach the merits, for we conclude that we are without jurisdiction to entertain this appeal.

The jurisdictional bases for this appeal are to be found, if at all, in 28 U.S.C. §§ 1291, 1292. Under § 1291, this court may review only "final decisions" of the district court. And, § 1292(a)(1) confers jurisdiction for appeals from "[i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions. . . ."

■ In this case the order of the district court requiring the prompt conclusion of arbitration of the Gevyn-Limbach portion of the courthouse claims does not terminate the litigation and therefore is not a "final decision" within the traditional meaning of that term. E. g., Baetjer v. Garzot Fernandez, 329 F.2d 798 (1st Cir. 1964). The source of this litigation, Limbach's action under Mass.Gen.Laws c. 149, § 29, which was stayed pending arbitration, will not be concluded until the accelerated arbitration has resolved Limbach's claim against Gevyn and the court has disposed of the stayed judicial proceeding.

■ Having determined that the order in this case is interlocutory in nature, we must consider whether it disposes of an independent or collateral claim of right which will evade review if not immediately appealable. New England Power Co. v. Asiatic Petroleum Corp., 456 F.2d 183, 185 (1st Cir. 1972). See Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 546–47, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949); 9 J. Moore, Federal Practice ¶ 110.10, at 133 (2d ed. 1975). Appellant Gevyn asserts that this case fits within the Cohen exception since the district court's order exposes Gevyn to the "risk of inconsistent arbitration awards." Gevyn evidently fears that the arbitrators, if they are required to rule at an early stage on Limbach's claim for the balance due for its services, will fail to include this early ruling in their calculations when making an award on Gevyn's counterclaim for indemnification. Gevyn's fears in this regard are heightened by the allegedly common practice of arbitrators to enter lump-sum awards without written explanation.

Assuming that Gevyn's fears are well-founded, we do not believe that the assertedly prejudicial impact of the district judge's order of April 2 will escape our review if enforcement by the court of an unfavorable arbitral award is ultimately appealed. Rather, it seems clear to us that Gevyn's ability to assert the alleged error of the April 2 order will not be vitiated at all by requiring appellant to await appeal of a final decision. It may well be that the error asserted by Gevyn will be insufficiently prejudicial to defeat enforcement of an arbitral award, an assumption on which we intimate no opinion. See generally, 5 Am. Jur.2d "Arbitration and Award," §§ 163, 167 (1962). The insufficiency of the defense in such a case, however, would result, not from the timing of Gevyn's appeal, but from the standard of review to be applied uniformly to arbitral awards.

As a result of our failure to entertain this appeal on the merits, Gevyn will be put to the added expense and inconvenience of seeing to its end an arbitral proceeding which Gevyn asserts was fatally infected by error at an early stage. This unfortunate

---

4. At the time of oral argument, we were informed that no award had yet been made.

consequence does not bring the case within the *Cohen* exception to § 1291, however. Rather, this is the price which litigants must pay if the federal judicial system is to be protected from piecemeal appeals from erroneous interlocutory orders, even those which ultimately result in reversible error. *See New England Power Co. v. Asiatic Petroleum Corp., supra.* The wisdom of the policy requiring litigants to defer appeals until the end of the case is particularly clear in this case where the ultimate effect of the trial judge's unusual order is largely speculative, suggesting that hindsight is the better tool for examining its allegedly prejudicial impact.[5]

Gevyn asserts in the alternative that the 1971 stay of judicial proceedings was an "injunction" within the meaning of § 1292(a)(1) and that the district judge's order of April 2 was a "modification" of that injunction and therefore appealable under § 1292(a)(1). We agree with appellant's characterization of the 1971 stay.[6] However, we do not agree that the 1976 order can be said to have "modified" the earlier decree.

It is true that the judge's order of April 2, 1976 is related to the 1971 stay in the sense that both affect the progress of the same case. And the speedy arbitration ordered in 1976 will presumably result in an earlier dissolution of the 1971 stay than would otherwise be the case. However, this interrelationship of the two orders is too attenuated for the 1976 order to be termed a "modification" of the 1971 stay. The 1971 order remains in full force and effect and it

5. Gevyn cites a recent second circuit case. *Compania Espanola de Petroleos v. Nereus Shipping, S.A.,* 527 F.2d 966 (2d Cir. 1975), *cert. denied* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976), for the proposition that an order directing the manner of arbitration is appealable. We are not convinced that the second circuit so held. The court in *Compania Espanola* was faced with "[a] mass of confusion and procedural effluvia," 527 F.2d at 968, that makes it difficult to determine exactly what kind of an order was appealed, but the opinion indicates that the court was moved to consider the order not because it mandated the procedural step of consolidation, but because it "obligated the parties to arbitrate, thereby affecting their substantive rights." *Id.* at 973. In any event, this circuit's position on the appealability of orders affecting the right or duty to arbitrate is set forth in *New England Power Co. v. Asiatic Petroleum Corp.,* 456 F.2d 183 (1st Cir. 1972). The reasoning of that case indicates that an order affecting the manner of arbitration is not appealable.

6. At first blush the 1971 stay might appear more properly to be termed an exercise by the district court of control of its own docket than an "injunction." However, for purposes of determining appealability under § 1292(a)(1) of stays of proceedings, the fiction persists that law courts and equity courts retain separate identities. *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 184–85, 75 S.Ct. 249, 99 L.Ed. 233 (1955); *New England Power Co. v. Asiatic Petroleum Corp.,* 456 F.2d 183, 189 (1st Cir. 1972). Where a court stays proceedings at law to permit the progress of another action at law, the law/equity distinction does not come into play, for the action is viewed simply as a court's control of its own docket. Since the stay in such a case is not equitable in origin, the order is not regarded as an injunction. *See Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 381–82, 55 S.Ct. 310, 79 L.Ed. 440 (1935). Where, however, a court stays an action "at law" in order to hear an equitable defense or counterclaim, the stay is viewed as akin to the *in personam* injunction of an equity court prohibiting a litigant from pursuing an action in a law court. *See Baltimore Contractors, Inc. v. Bodinger, supra,* 348 U.S. at 182–84, 75 S.Ct. 249; *Ettelson v. Metropolitan Life Ins. Co.,* 317 U.S. 188, 191–92, 63 S.Ct. 163, 87 L.Ed. 176 (1942); *Enelow v. New York Life Ins. Co., supra,* 293 U.S. at 382, 55 S.Ct. 310.

In this case the action stayed by the 1971 order was "at law." To be sure, the Massachusetts statute creating the action sued upon calls for it to be brought "in equity" in Massachusetts courts. However, once the case is removed to federal court, the nomenclature of the action is determined by federal law. *Warren Bros. Co. v. Cardi Corp.,* 471 F.2d 1304, 1306 (1st Cir. 1973); *Kirschner v. West Co.,* 300 F.2d 133, 134 (3d Cir. 1962) (en banc.). *See Stern v. South Chester Tube Co.,* 390 U.S. 606, 610, 88 S.Ct. 1332, 20 L.Ed.2d 177 (1968); *Guaranty Trust Co. v. York,* 326 U.S. 99, 105–07, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). An action under Mass.Gen.Laws c. 149, § 29, seeking money damages from the principal or its surety is characterized for purposes of federal law as "at law." *See Warren Bros. Co. v. Cardi, supra.* When such an action at law is stayed to permit arbitration to proceed, the order is characterized as an injunction for purposes of § 1292. *Baltimore Contractors, Inc. v. Bodinger, supra,* 348 U.S. at 184, 75 S.Ct. 249. *See generally* Annot., 11 A.L.R.Fed. 640 (1972).

cannot be said to have been modified until its explicit terms have been changed.

■ Appellant next argues that if the order of April 2 is not a "modification" of an injunction, it is an "interlocutory order . . . *granting* . . . an injunction" within the meaning of § 1292(a)(1). (Emphasis supplied.) The Supreme Court has narrowly defined the class of "interlocutory" injunctions, the granting of which may be appealed. The Court has read into § 1292(a)(1) a requirement that the injunction dispose of a substantive issue:

> "Orders that in no way touch on the merits of the claim but only relate to pretrial procedures are not in our view 'interlocutory' within the meaning of § 1292(a)(1)."

*Switzerland Cheese Ass'n v. E. Horne's Market, Inc.,* 385 U.S. 23, 25, 87 S.Ct. 193, 195, 17 L.Ed.2d 23 (1966). *See also International Products Corp. v. Koons,* 325 F.2d 403, 406 (2d Cir. 1963); 9 J. Moore, Federal Practice ¶ 110.20[1] (2d ed. 1975). *Cf. Cohen v. Beneficial Industrial Loan Corp., supra.* The order in this case does not touch the merits of any claim of right. Rather, we believe, it relates only to "pretrial procedures" and is therefore not an "interlocutory order . . . granting . . . an injunction" within the meaning of § 1292(a)(1). *Switzerland Cheese Ass'n v. E. Horne's Market, Inc., supra.*

For these reasons we conclude that we have no jurisdiction to entertain this appeal.

*Appeal dismissed.*