**Jean HAYES and Citizens National Bank, Plaintiffs-Appellants,**

v.

**ALLSTATE INSURANCE COMPANY and Allstate Indemnity Company, Defendants-Appellees.**

**No. 83–1456.**

United States Court of Appeals, Seventh Circuit.

Argued Sept. 21, 1983.

Decided Dec. 2, 1983.

Rehearing and Rehearing En Banc Denied Feb. 17, 1984.

Before ESCHBACH and POSNER, Circuit Judges, and SWYGERT, Senior Circuit Judge.

SWYGERT, Senior Circuit Judge.

■ The plaintiffs-appellants, Jean Hayes and Citizens National Bank, appeal from the district court's order of March 2, 1983 in their contract action against Allstate Insurance Company and Allstate Indemnity Company ("Allstate"). This order granted Allstate's motion to stay the proceedings and ordered the parties to proceed to appraisal. Our jurisdiction is based on 28 U.S.C. § 1292(a)(1). Because we believe that the district court erred by ordering appraisal when it was not unambiguously mandated by the terms of the insurance policy in question, we vacate the district court's order and remand the case for further proceedings.[1]

A house owned by Hayes[2] and insured under a policy issued by Allstate was destroyed in a fire on October 18, 1980. After investigating Hayes's claim, Allstate's representative informed Hayes's attorney that Allstate could not agree with the amount stated on Hayes's proof of loss form and, on January 21, 1981, made an offer of $175,-967.10 for repair of the house, $159,976.96 for the contents, and $2,000 for restoration of the yard. Several days later, Hayes's attorney spoke with Allstate's representative and stated that his client accepted the offer for the contents but wanted to negotiate further on the amount offered for the fire damage to the house. Hayes's attorney then sent a letter to Allstate's representative on March 19, 1981 stating that he would recommend a settlement of $330,300 (ninety percent of the policy limit for dwelling protection). This recommendation was based on five separate construction reports submitted to Allstate indicating a consensus

Stephen L. Williams, Mann, Chaney, Johnson & Goodwin, Terre Haute, Ind., for plaintiffs-appellants.

John W. Hammel, Yarling, Robinson, Hammel & Lamb, Indianapolis, Ind., for defendants-appellees.

1. Allstate had also moved to dismiss the appeal on the ground that this court is precluded from reviewing the district court's order by 28 U.S.C. § 2105, which states "[t]here shall be no reversal in ... a court of appeals for error in ruling upon matters in abatement which do not involve jurisdiction." We do not agree, however, with Allstate's characterization of the order as a "ruling upon matters in abatement." The

order, in fact, went to the merits of the plaintiffs' action on the contract, and is therefore outside the scope of 28 U.S.C. § 2105. *See Bowles v. Wilke,* 175 F.2d 35, 37–38 (7th Cir. 1949). The motion to dismiss is denied.

2. Citizens National Bank (of Linton, Indiana) was the mortgagee of the property in the amount of $192,500.

of opinion that the house had been ninety percent destroyed. Several weeks later, Allstate's representative responded by sending a draft to Hayes's attorney for $175,-967.10, the amount of Allstate's original offer on the dwelling claim. The draft was accompanied by a letter explaining that the amount was based on a bid from Ernie Hatfield, a rebuilder of fire-damaged homes frequently engaged by Allstate, to rebuild the house for that price. Hayes's attorney then requested copies of the bid and supporting documents in order to determine whether to recommend settlement to his client. Allstate's representative mailed the requested documents to Hayes's attorney on April 13, 1981. On April 29, Hayes's attorney rejected the offer of $175,967.10 by letter, returned the draft in that amount to Allstate, and filed suit in Sullivan Circuit Court, Sullivan County, Indiana.

■ Allstate's attorney filed a petition for removal from the circuit court to the federal district court on May 19, 1981.[3] On June 17, Allstate's attorney then made a written demand for appraisal, naming Hatfield as its appraiser and stating that the demand was pursuant to Condition 8 of the policy at issue. Condition 8, entitled "Appraisal," provides in part: "If *you* and *we* fail to agree on the amount of loss, either party may make written demand for an appraisal. Each party will select a competent and disinterested appraiser and notify the other of the appraiser's identity within 20 days after the demand is received." On July 2, 1981, Hayes's attorney rejected Allstate's demand by letter which referred to the last sentence of Condition 7 of the policy. Condition 7, entitled "Our Payment of Loss," provides as follows: "*We* will settle any covered loss with *you*. *We* will pay *you* unless another payee is named in the policy. *We* will pay within 60 days after the amount of loss is finally determined. This amount may be determined by an agreement, between *you* and *us*, a court judgment, or an appraisal award."

Allstate responded by filing a motion to stay and to enforce appraisal procedures. The district court granted Allstate's motion, basing its decision on the language of Conditions 7 and 8 of the insurance contract. The court construed these two conditions as meaning that "although the parties are free at the outset to pursue any remedy provided in Condition 7, once a demand for the appraisal procedures has been made by either party, those procedures become a mandatory condition precedent to bringing suit." The court also found that the time period in which Allstate had made written demand for appraisal was not unreasonable, and therefore rejected Hayes's assertion that Allstate had waived any right to appraisal.

On appeal, Hayes and Citizens National Bank contend that the order compelling appraisal was contrary to the language of the insurance policy and should therefore be vacated. They alternatively assert that the district court erred in concluding that Allstate had not waived any right to appraisal, and that the court's failure to decide several issues, including whether Allstate's appraiser should be disqualified, deprived the appellants of their constitutional rights to due process and equal protection. Because we agree with the first contention, we need not consider the remaining arguments.

In this case, the district court stayed the action and ordered the parties to proceed under the appraisal procedures of Condition 8 in accordance with its determination that the policy required an appraisal. While a court can exercise discretion in deciding whether to stay an action simply for purposes of awaiting the outcome of another pending proceeding, *see Voktas, Inc. v. Central Soya Co., Inc.,* 689 F.2d 103 (7th Cir. 1982); *Microsoftware Computer Systems,*

---

**3.** The plaintiffs-appellants suggest that removal may have been improper because diversity jurisdiction is questionable. We see no reason to question the district court's jurisdiction. Under 28 U.S.C. § 1332(c), Allstate is a citizen of Illinois, the state in which it is incorporated and has its principal place of business, and not a citizen of Indiana where it simply has offices. Nor is diversity of citizenship defeated by the proviso of § 1332(c) since the policy here is not "liability insurance." *See Aetna Casualty & Surety Insurance Company v. Greene,* 606 F.2d 123, 126 (6th Cir.1979).

*Inc. v. Ontel Corp.,* 686 F.2d 531, 537–38 (7th Cir.1982), the order in this case was not the result of discretionary judgment. There was no other pending proceeding until the court compelled an appraisal, and the purpose of the order was to enforce the policy conditions as interpreted. We therefore review the court's order to determine whether this interpretation was erroneous under Indiana law.

■ Although the Indiana courts have not construed an insurance policy like the one at issue here, we are guided by several Indiana cases that have articulated general principles for construing the language of insurance policies. First, Indiana courts have held that any ambiguities in insurance contracts must be construed against the insurer and in favor of the insured because the contracts are drafted solely by the insurers and are thus contracts of adhesion. *Travelers Indemnity Co. v. Armstrong,* 384 N.E.2d 607, 613 (Ind.App.1979); *Freeman v. Commonwealth Life Insurance Co.,* 149 Ind. App. 211, 271 N.E.2d 177, 181 (1971), *transfer denied,* 259 Ind. 237, 286 N.E.2d 396 (1972). An ambiguity exists "if reasonably intelligent men, upon reading the contract, would honestly differ as to its meaning." *Travelers Indemnity Co., supra,* 384 N.E.2d at 613. Second, regarding the more specific issue of whether a policy providing for appraisal should be construed as making appraisal a condition precedent to a right of action, an 1895 decision states that the policy should not be so construed unless the condition is actually expressed in the contract or is necessarily implied from its terms. *Manchester Fire Assur. Co. v. Koerner,* 13 Ind.App. 372, 40 N.E. 1110, 1111

(1895). More recent Indiana cases have discussed the same issue when construing contracts that provide for arbitration and have taken at least as strict an approach as was taken in *Manchester Fire Assur. Co., supra.* See *Kendrick Memorial Hospital, Inc. v. Totten,* 408 N.E.2d 130, 135 (Ind.App.1980); *Shahan v. Brinegar,* 390 N.E.2d 1036, 1040 (Ind.App.1979).[4]

■ Applying these principles to this case, we do not agree that the Allstate policy issued to Hayes conditions a right of action on the completion of an appraisal. The policy does not expressly provide that no action may be maintained upon it until after the amount of loss is determined by appraisal. To the contrary, Condition 7 expressly states that the amount of the loss may be determined by a court judgment. Condition 8 specifies the procedures by which the appraisal is made, but is silent on whether appraisal must precede the action. Condition 12, which provides that no action may be brought against Allstate unless the insured has fully complied with all the terms of the policy, does not expressly apply either since Hayes was in compliance with all the terms when suit was brought.

Nor do the policy conditions, when read together, necessarily imply that the right of action is conditioned on the completion of an appraisal. Under Condition 7, Allstate expressly promises to pay the insured the amount of loss determined by court judgment.[5] While the policy also permits Allstate to demand an appraisal, if the demand is only made after the insured has properly brought suit, nothing in the policy necessar-

---

**4.** In *Shahan,* the court noted that "[t]he intention to make arbitration a condition precedent to the right of action may be either express or implied," but that an implied condition cannot be relied upon unless "the implication is tantamount to a direct expression only because nothing else is inferable." *Shahan, supra,* 390 N.E.2d at 1040 (quoting 6 C.J.S. *Arbitration* § 28 at 205–06). The court in *Kendrick Memorial Hospital, Inc.,* went even further, stating that an arbitration provision is not the equivalent of a covenant not to sue prior to the arbitration unless expressly so provided in the contract. *Kendrick Memorial Hospital, Inc., supra,* 408 N.E.2d at 135.

**5.** Because the Allstate policy includes Condition 7 it differs significantly from the policy construed in *Vernon Ins. & Trust Co. v. Maitlen,* 158 Ind. 393, 63 N.E. 755 (1902), the Indiana case on which Allstate relies. In *Vernon Ins. & Trust Co.,* the court held that the policy at issue there made appraisal a condition precedent to an action. That policy, however, did not provide for judicial determination of the loss, but rather expressly stated that the ascertainment of loss "shall be made by the insured and the Company, or, if they differ, then by appraisers." *Vernon Ins. & Trust Co., supra,* 63 N.E. at 756.

ily precludes the court from still determining the loss as specified by Condition 7.

■ Finally, Allstate also argues that even if appraisal is not a condition precedent to an action, under *Manchester Fire Assur. Co., supra,* we should view the district court's order as a separate equitable remedy, similar to specific performance, through which the court enforced Allstate's contractual rights. In *Manchester Fire Assur. Co.,* the court held that where appraisal is not a condition precedent to an action, a breach of a policy provision for submitting the amount of loss to arbitration will support a separate action. *Manchester Fire Assur. Co., supra,* 40 N.E. at 1111. We do not believe, however, that the policy at issue here supported Allstate's request for specific performance. Unlike the Allstate policy, the policy construed in *Manchester Fire Assur. Co.* expressly made the insurer's payment of a disputed loss contingent on submitting the amount of loss to appraisal. In contrast, the Allstate policy makes payment contingent on determination of the loss by appraisal *or* by court judgment. Where the insured, like Hayes, is properly pursuing determination by court judgment and Allstate subsequently pursues determination by appraisal, the policy is ambiguous as to which method of determination supersedes the other. Under established Indiana law the policy must therefore be construed against Allstate, and enforcement of the appraisal procedure was improper.

For the reasons stated above, the order of the district court is vacated and the case is remanded for further proceedings.

POSNER, Circuit Judge, dissenting.

The majority opinion assumes, without any discussion of the point, that the district judge's order staying the proceedings before him to allow the parties to repair to the appraisers is appealable under 28 U.S.C. § 1292(a)(1) as a preliminary injunction. The assumption is natural because the appellees have not contested our appellate jurisdiction. But we have an independent responsibility to ascertain and abide by the limitations Congress has placed on that jurisdiction.

As an original matter it seems more than clear that this stay should not be appealable. Since the beginning, the general rule in the federal court system has been that only final judgments are appealable as a matter of right. See Act of Sept. 24, 1789, §§ 21, 22, 25, 1 Stat. 83–87; 28 U.S.C. §§ 1257, 1291; *Switzerland Cheese Ass'n v. E. Horne's Market, Inc.,* 385 U.S. 23, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966). The final-judgment rule minimizes delay in the trial court and repeated consideration of the same case in the appellate court by making sure that there will be no more than one appeal per case—naturally at the end rather than in the beginning or middle. The exception in 28 U.S.C. § 1292(a)(1) for orders granting or denying preliminary injunctions is based on the fact that the erroneous grant of a preliminary injunction may cause a defendant irreparable harm (notwithstanding the requirement of Fed.R.Civ.P. 65(c) that the plaintiff post an injunction bond), while the erroneous denial of a preliminary injunction must, virtually by definition, cause a plaintiff irreparable harm since he would not otherwise be entitled to an injunction. There is no possibility of irreparable harm from the district court's order staying this case while the fire damage to the Hayes residence is appraised. Since appraisal could not take more than a few days, the delay of the plaintiffs' lawsuit that it would entail would be trivial, and certainly could not harm them irreparably. Should they disagree with the results of the appraisal, they could—just as soon as the district court entered its final judgment on the basis of the appraisal—file the same appeal they have filed from the stay; and if we then reversed the district court's judgment the appraisal would have caused the plaintiffs no harm at all. They might, of course, accept the appraisal, which would moot the appeal.

All that is really at stake for the plaintiffs, therefore, is a slight delay in their getting appellate review of the stay of the district court's determination that the fire damage is subject to appraisal, if they do not like the results of the appraisal. But meanwhile the appeal they have taken has

already caused a significant delay in completing the trial. Interlocutory appeal is inappropriate in these circumstances. "Unless a litigant can show that an interlocutory order of the district court might have 'serious, perhaps irreparable, consequence,' and that the order can be 'effectually challenged' only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal." *Carson v. American Brands, Inc.,* 450 U.S. 79, 84, 101 S.Ct. 993, 997, 67 L.Ed.2d 59 (1981). See also *Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364 (1978); *Mellon Bank, N.A. v. Pritchard-Keang Nam Corp.,* 651 F.2d 1244, 1249 (8th Cir.1981).

The only conceivable basis for our jurisdiction is the *Enelow-Ettelson* rule (named after the two cases that first announced it) for determining whether a stay is an injunction for purposes of appeal under section 1292(a)(1). Evolved in a series of Supreme Court decisions, see *Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 381–83, 55 S.Ct. 310, 310–12, 79 L.Ed. 440 (1935); *Shanferoke Coal & Supply Corp. v. Westchester Service Corp.,* 293 U.S. 449, 451–52, 55 S.Ct. 313, 314–15, 79 L.Ed. 583 (1935); *Ettelson v. Metropolitan Life Ins. Co.,* 317 U.S. 188, 190–92, 63 S.Ct. 163, 164–165, 87 L.Ed. 176 (1942); *City of Morgantown v. Royal Ins. Co.,* 337 U.S. 254, 257–59, 69 S.Ct. 1067, 1069–70, 93 L.Ed. 1347 (1949); *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 179–86, 75 S.Ct. 249, 251–55, 99 L.Ed. 233 (1955), and since applied by this and other circuits in many cases, see, e.g., *Microsoftware Computer Systems, Inc. v. Ontel Corp.,* 686 F.2d 531, 533–36 (7th Cir.1982); *Whyte v. THinc Consulting Group Int'l,* 659 F.2d 817, 818–20 (7th Cir.1981); *Mellon Bank, N.A. v. Pritchard-Keang Nam Corp., supra,* 651 F.2d at 1247; *Jensenius v. Texaco, Inc.,* 639 F.2d 1342 (5th Cir.1981); 16 Wright, Miller, Cooper & Gressman, Federal Practice and Procedure § 3932 at pp. 48–58 (1977), the *Enelow-Ettelson* rule classifies as an injunction a stay issued in a suit *at law* for the purpose of allowing consideration of an *equitable* defense. *Enelow,* for example, was a suit for damages under an insurance contract, and the insurance company pleaded fraud as a defense.

The analysis underlying this result is an historical one. What is now section 1292(a)(1) was first enacted in 1891 as part of the Evarts Act, 26 Stat. 828. Law and equity were still separate jurisprudential systems in the federal courts then, though administered by the same judges, so that a federal district judge was both a law judge and a chancellor. *Enelow v. New York Life Ins. Co., supra,* 293 U.S. at 382–83, 55 S.Ct. at 311–12. A law judge could stay a suit pending before him, on a variety of grounds, and if he did so this was not the issuance of an injunction, because law judges by definition could not issue injunctions. But he could not stay a suit before him in order to consider a defense that could be asserted only by way of an equity action, because (again by definition) he had no power to consider such a defense. A litigant asserting such a defense could, however, go to the chancellor and ask him to enjoin the suit while the chancellor considered the defense. If the underlying suit was equitable rather than legal the chancellor's stay was not an injunction; it was merely an ordering of matters on his equity docket. The upshot was that a stay was appealable as an injunction only if it stayed a suit at law to permit consideration of an equitable defense.

This analysis is internally inconsistent and historically inaccurate. Even when the law judge could not consider a particular defense himself, there was no reason why he could not stay the suit before him to allow the defendant to repair to the chancellor to have the chancellor consider it. Moreover, law judges actually had the power to consider many equitable defenses, such as fraud, see 1 High, The Law of Injunctions 100–06 (4th ed. 1905); *Enelow, supra,* 293 U.S. at 385, 55 S.Ct. at 312— which makes the result in *Enelow* very puzzling. And when the law judge and the chancellor were the same person, he would not have to issue an injunction in order to stay the law part of the proceeding, and there was no compelling reason to call his stay an injunction just because it would be

an injunction in a system with separate law and equity judges. Worse, the historical analysis is unrelated to the purpose of what is now section 1292(a)(1), which is not to preserve procedural fossils but to allow immediate appeals only where necessary to avert irreparable harm. In any event, the merger of law and equity in the federal courts brought about by the Federal Rules of Civil Procedure (see Rules 1 and 2) should have put an end to the notion that to stay a suit at law pending consideration of an equitable defense required issuing an injunction. But, surprisingly, the Supreme Court refused to do this in the *Ettelson* case, which was decided after the Federal Rules were adopted.

Neither in *Ettelson* nor in any subsequent case has the Court given a clear reason for clinging to the historical approach; nor has anyone else been able to think of one. Although Rule 82 states that the Federal Rules of Civil Procedure are not to limit the jurisdiction of the federal district courts, the issue here is the jurisdiction of the courts of appeals. And while, whatever the scope of Rule 82, it would be reckless to infer that Congress, by authorizing the Supreme Court to make rules of procedure, had also authorized it to limit the jurisdiction of any of the federal courts, this concern is not engaged when the rules eliminate appellate jurisdiction over a particular type of order (here an "injunction" of a suit at law pending the chancellor's consideration of an equitable defense) as a mere incident of eliminating the order. The jurisdictional consequences would be much less significant than those of using Rule 13(a) (compulsory counterclaims) to bring into the federal courts state law claims that federal courts would not otherwise have jurisdiction over—a step that has been taken with scarcely a murmur of protest. See *Baker v. Gold Seal Liquors, Inc.,* 417 U.S. 467, 468 n. 1, 94 S.Ct. 2504, 2506 n. 1, 41 L.Ed.2d 243 (1974). And although what is now section 1292(a)(1) has been reenacted without pertinent change since the merger of law and equity, it would be entirely unrealistic to treat the reenactment as a ratification of the *Enelow-Ettelson* doctrine. Few if any Congressmen can be aware of this tenebrous corner of federal jurisdiction, let alone can be assumed to have approved it simply by not overruling it in the course of reenacting section 1292(a)(1). There is no evidence that members of Congress have ever thought about the question.

The *Enelow-Ettelson* doctrine has been denounced by an impressive array of judges and commentators. See, e.g., *Hussain v. Bache & Co.,* 562 F.2d 1287, 1289, 1291 (D.C.Cir.1977); 9 Moore's Federal Practice ¶ 110.20[3] at pp. 245–46 (2d ed. 1983); Wright, The Law of Federal Courts 710–11 (4th ed. 1983); and cases cited in 16 Wright, Miller, Cooper & Gressman, *supra,* § 3923 at 53–54 n. 14, and in 1982 Pocket Part thereto at p. 18. Although it probably is too well entrenched to be overturned by a mere court of appeals, the enactment after the Supreme Court last spoke to the issue in *Baltimore Contractors* of the Interlocutory Appeals Act of 1958, 28 U.S.C. § 1292(b), just may provide a lever for the lower court bold enough to use it to unseat *Enelow-Ettelson.* See 16 Wright, Miller, Cooper & Gressman, *supra,* § 3923, at 65. The *Enelow-Ettelson* approach is also inconsistent with *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), also decided a few years after *Baltimore Contractors.* The issue there was whether, in a case involving an equitable claim and a legal counterclaim, the district judge could try the equitable claim first (with possible res judicata or collateral estoppel effect on the legal counterclaim), and the Court held that he could not, and in so holding brushed aside the historical argument that a chancellor could enjoin a suit at law pending determination of a party's equitable claim. The Court held that whether a modern district court could try the equitable claim first "must be determined, not by precedents decided under discarded procedures, but in the light of the remedies now made available by the . . . Federal Rules" of Civil Procedure, with their merger of law and equity. 359 U.S. at 507–08, 79 S.Ct. at 954–55. Cf. *Mellon Bank, N.A. v. Pritchard-Keang Nam Corp., supra,* 651 F.2d at 1249 n. 5.

But for purposes of this opinion I shall assume that the *Enelow-Ettelson* doctrine is controlling and that our only job is to apply it. This requires us to decide whether in 1891 the defendant in a damage suit for breach of an insurance contract who contended that the contract entitled him to demand appraisal of the insured's loss was asserting an equitable defense that could not be asserted in an action at law. He was not. As the Supreme Court made clear in *Hamilton v. Liverpool & London & Globe Ins. Co.,* 136 U.S. 242, 254–56, 10 S.Ct. 945, 949–50, 34 L.Ed. 419 (1890), the provision relating to appraisal was viewed as merely a condition precedent to the plaintiff's asserting his contract rights. See also *Manchester Fire Assurance Co. v. Koerner,* 13 Ind.App. 372, 378, 40 N.E. 1110, 1111 (1895). Since the parties had agreed that the value of the thing that the contract concerned would be determined by appraisers, a suit brought by one party before the required appraisal would be premature, like suing on a note before making a demand for payment. Presumably the court would either dismiss the suit or if as here the condition precedent was invoked after the suit was brought would stay the suit until the condition was fulfilled. There would be no need for the defendant to get an injunction in order to stay the suit pending the appraisal, any more than a defendant in an action on a note would have to get an injunction in order to stay the action while the plaintiff demanded payment from the defendant. In this case of course the majority has held that the appraisal clause in the contract was not a condition precedent. But that is the issue on the merits. The jurisdictional issue is whether a stay pending an appraisal demanded (rightly or wrongly) pursuant to contract is appealable; *Hamilton* shows it is not.

It makes no difference that a stay of a suit at law to permit not appraisal but arbitration was held in *Shanferoke Coal & Supply Corp. v. Westchester Service Corp., supra,* 293 U.S. at 452, 55 S.Ct. at 314, to be an appealable order, on the unconvincing ground that a defense that the parties had agreed to arbitrate their dispute is equitable. The ground is unconvincing because it is not true that in 1891 if you wanted a stay pending arbitration you had to go to the chancellor; if you wanted such a stay you could not get it. Executory contracts of arbitration were not enforceable. They were held to be against public policy because they "ousted" the jurisdiction of the courts to decide the parties' dispute. Correlatively, if a party refused to honor his agreement to arbitrate the dispute and instead sued, the defendant could not get a stay pending arbitration. See on the specific point *Red Cross Line v. Atlantic Fruit Co.,* 264 U.S. 109, 121, 44 S.Ct. 274, 276, 68 L.Ed. 582 (1924); Story on Equity § 804 (Gould 10th ed. 1892); Note, *Appealability in the Federal Courts,* 75 Harv.L.Rev. 351, 373 (1961), and on the history of judicial hostility to arbitration *Kulukundis Shipping Co. v. Amtorg Trading Corp.,* 126 F.2d 978, 982–85 (2d Cir.1942) (Frank, J.).

I do not suggest that because *Shanferoke* appears to rest on an historical error we should ignore it. But we should not extend it. And bringing appraisal under it would be an extension. Appraisal and arbitration were in 1891 and are today different animals. I have already pointed out that in 1891, when agreements to arbitrate were not enforceable at law or in equity, agreements to appraise were enforceable at law—which means that under the *Enelow-Ettelson* doctrine a stay pending appraisal is not an injunction. To extend *Shanferoke* to appraisal would thus be to create conflict within the *Enelow-Ettelson* line of cases.

*Hamilton* itself distinguishes arbitration from appraisal. The provision for appraisal, "not ousting the jurisdiction of the courts [a veiled but unmistakable reference to arbitration], but leaving the general question of liability to be judicially determined, and simply providing a reasonable method of estimating and ascertaining the amount of the loss, is unquestionably valid." 136 U.S. at 255, 10 S.Ct. at 949. The distinction between appraisal and arbitration continues to be stressed. See, e.g., 14 Couch on Insurance §§ 50:5–7 (2d ed. rev. 1982); Dobbs, Handbook on the Law of Remedies 937 (1973). It is a practical as well as technical and historical distinction.

Since arbitration may be protracted (as in *Merit Ins. Co. v. Leatherby Ins. Co.,* 714 F.2d 673, 676 (7th Cir.1983), where it lasted three years), a plaintiff forced into arbitration against his will may be irreparably harmed, for if it later turns out that the matter should not have been submitted to arbitration he will not be able to recover his lost time and expense. But, as has long been recognized, appraisal—partly because it is limited to issues of valuation, partly because it is carried out with extreme informality, but mainly because appraisers, unlike arbitrators, do not have to listen to witnesses or take other evidence but generally base their decision (valuation) on their own observations and knowledge—is neither expensive nor time-consuming. See *Phoenix Ins. Co. v. Everfresh Food Co.,* 294 F. 51, 55 (8th Cir.1923); *American Steel Co. v. German-American Fire Ins. Co.,* 187 F. 730, 733 (3d Cir.1911) ("Being a mere appraisement, and there being nothing in the agreement which made witnesses or notice requisite, the presence of the parties, notice, and the giving of testimony were not necessary"). Cf. *Martinsburg & Potomac R.R. v. March,* 114 U.S. 549, 55 S.Ct. 1035, 29 L.Ed. 255 (1885).

The difference between appraisal and arbitration is illustrated by *Hart v. Orion Ins. Co.,* 427 F.2d 528 (10th Cir.1970). The plaintiff, a pilot, sued an insurance company for alleged breach of an occupational-disability policy which provided "that a medical examination and arbitration by appointed medical arbitrators will determine whether disability has occurred." *Id.* at 529. The suit was stayed pending "arbitration" in accordance with this provision and the plaintiff appealed. The court of appeals held that the stay was not appealable, because the requirement of "arbitration" was merely a condition precedent to the plaintiff's collecting under the policy. At first glance this result is inconsistent with the *Enelow-Ettelson* doctrine. But the impression of inconsistency is dispelled once you realize that what the insurance policy and the court called "arbitration" was really a form of appraisal. The "medical arbitrators" were not going to take evidence; they were going to examine the plaintiff to determine whether he was disabled, much as the appraisers in this case are supposed to examine the Hayes residence to see how much damage it sustained from the fire. This case is an even weaker one for appealability than *Hart,* since the contract here referred to appraisal explicitly.

The tenuous analogy between arbitration and appraisal should not be used to extend the boundaries of a doctrine (*Enelow-Ettelson*) for which no one has had a good word in many years. Cf. *Coastal Steel Corp. v. Tilghman Wheelabrator Ltd.,* 709 F.2d 190, 208–09 (3d Cir.1983) (concurring opinion). Other courts have refused to reason by analogy in this area. An example is the Second Circuit's decision in *Allied Air Freight, Inc. v. Pan American World Airways, Inc.,* 340 F.2d 160 (2d Cir.1965) (per curiam), which held that a stay of a suit at law pending proceedings before an administrative agency was not appealable despite the analogy to a stay pending arbitration. In *Allied* the long delays that administrative proceedings so frequently involve supplied a practical basis for the analogy but the court was unimpressed. Here there is not even a practical argument for allowing an immediate appeal.

I have thus far discussed the issue of appealability as if the only thing the district judge had done was to stay the suit while the parties got an appraisal; but in addition he actually ordered them to get the appraisal. Any order to do something resembles a mandatory injunction, yet most such orders are not appealable. For example, even though under the *Enelow-Ettelson* doctrine stays of suits at law pending arbitration are deemed to be injunctions, interlocutory orders to arbitrate, though they have the form of mandatory injunctions, are not. See *Lummus Co. v. Commonwealth Oil Ref. Co.,* 297 F.2d 80, 84–85 (2d Cir.1961) (Friendly, J.); *Clark v. Kraftco Corp.,* 447 F.2d 933, 935 (2d Cir.1971); *University Life Ins. Co. of America v. Unimarc Ltd.,* 699 F.2d 846, 849 (7th Cir.1983) (dictum). If an order to arbitrate is not appealable as an injunction, I cannot see why an order to appraise should be. Discovery orders, too, have the form of mandatory injunctions but are not classified as injunctions for pur-

poses of appealability. See Wright, The Law of Federal Courts 550–51 (4th ed. 1983). For other examples of district court orders to do construed not to be mandatory injunctions for purposes of appealability see *Green v. Department of Commerce*, 618 F.2d 836, 839 (D.C.Cir.1980) (order compelling Department of Commerce to notify companies that reports they had made to the Department might be disclosed publicly); *Socialist Workers 1974 Nat'l Campaign Comm. v. Jennings*, 567 F.2d 1133 (D.C.Cir. 1977) (per curiam) (order directing Federal Election Commission to compile a factual record); *Limbach Co. v. Gevyn Construction Corp.*, 544 F.2d 1104, 1108 (1st Cir.1976) (order requiring arbitrators to make their award within 60 days); *International Products Corp. v. Koons*, 325 F.2d 403, 406 (2d Cir.1963) (Friendly, J.) (order directing impounding of documents); and *Teamsters Local Unions 745, Etc. v. Braswell Motor Freight Lines, Inc.*, 428 F.2d 1371, 1373 (5th Cir.1970) (order referring computation of damages to a master)—the last of these cases being particularly *apropos* in view of the nature of the order that the plaintiffs are trying to appeal in this case. See also *Stewart-Warner Corp. v. Westinghouse Elec. Corp.*, 325 F.2d 822, 829 (2d Cir.1963) (Friendly, J., dissenting).

In deciding whether an order to do something is appealable the courts have looked to the purpose of section 1292(a)(1). That is the basis on which the Second Circuit in *Lummus* held that interlocutory orders to arbitrate are not appealable. I have already explained why there is no good reason to make the stay in this case appealable. The fact that the district judge went beyond the stay and actually ordered the parties to appraise is no reason for allowing an immediate appeal. That order is, as a practical matter, but a rhetorical embellishment of the stay. The stay by itself would force the plaintiffs into appraisal just as effectively as the stay plus order because until the plaintiffs got the appraisal they could not recover any damages. And it is inconceivable to me that if the plaintiffs refused to get the appraisal the district judge would hold them in contempt of his order. He would just dismiss the suit, which is also

what he would do if after he granted a stay without an accompanying order to appraise the plaintiffs refused to get the appraisal. The stay put the plaintiffs to a choice between appraisal and dropping their suit. The order to appraise did not alter that choice; it is surplusage; it should not make an otherwise unappealable stay appealable.

On the merits of the appeal, assuming as I do not that we have jurisdiction to decide it, I also find myself in dissent. The insurance contract gave *either party* an unambiguous right to demand appraisal. Because the provision in question does not favor the insurance company over the insured, but creates a right of appraisal equally available to either party, the cases the majority cite that hold that contractual provisions are to be construed against the insurance company are not in point. For all we know we are hurting more insureds than insurance companies by reading the right to demand appraisal out of the contract.