[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

Nos. 22-11059, 22-10877, 22-11060, 22-10889

_____

POSITANO PLACE AT NAPLES I CONDOMINIUM
ASSOCIATION, INC.,

a Florida not-for-profit Corporation,

POSITANO PLACE AT NAPLES II CONDOMINIUM
ASSOCIATION, INC.,

a Florida not-for-profit Corporation,

POSITANO PLACE AT NAPLES III CONDOMINIUM
ASSOCIATION, INC.,

a Florida not-for-profit Corporation,

POSITANO PLACE AT NAPLES IV CONDOMINIUM
ASSOCIATION, INC.,

a Florida not-for-profit Corporation,

Plaintiffs-Appellees,

*versus*

EMPIRE INDEMNITY INSURANCE COMPANY,

Defendant-Appellant.

————————————

Appeals from the United States District Court
for the Middle District of Florida
D.C. Docket Nos. 2:21-cv-00178-SPC-MRM, 2:21-cv-00181-SPC-
MRM, 2:21-cv-00183-SPC-MRM, 2:21-cv-00186-SPC-MRM

————————————

Before LUCK, LAGOA, and TJOFLAT, Circuit Judges.

LAGOA, Circuit Judge:

These appeals[1] are about a pending insurance contract dispute between Positano Place at Naples I Condominium Association, Inc., and Empire Indemnity Insurance Company, which issued an insurance policy (the "Policy") to Positano for coverage of five buildings that Positano owns in Naples, Florida. Following Hurricane Irma, Positano filed a first-party claim for property insurance benefits under the Policy, claiming that Hurricane Irma damaged its property and that the damage was covered by the

———————————————

[1] We previously consolidated case numbers 22-11059, 22-10877, 22-11060, and 22-10889 for purposes of hearing oral argument in those cases. We now *sua sponte* consolidate those cases for purposes of resolving these appeals.

Policy.  After Empire investigated Positano's claim, Empire determined that there was coverage as to only three of the five buildings covered by the Policy but disagreed as to the amount of the loss. In response, Positano sought to invoke appraisal based on the Policy's appraisal provision.  When Empire did not respond to Positano's appraisal demand, Positano sued Empire in Florida state court, and Empire removed the case to federal court based on diversity jurisdiction.

Following removal, Positano moved to compel appraisal and to stay the case pending the resolution of the appraisal proceedings, which Empire opposed.  The magistrate judge issued a report recommending that the district court grant Positano's motion, and, over Empire's objection, the district court ordered the parties to appraisal and stayed the proceedings pending appraisal.  Empire timely appealed the district court's order.

We issued a jurisdictional question to the parties asking them to address whether this Court had appellate jurisdiction over an order that compelled appraisal, stayed the case pending appraisal, and directed the parties to file status reports on the appraisal process.  We also asked the parties to address whether orders compelling appraisal are treated the same as orders compelling arbitration for purposes of appellate jurisdiction.

After careful review, and with the benefit of oral argument, we conclude that the district court's order compelling appraisal and staying the proceedings pending appraisal is an interlocutory order that is not immediately appealable under 28 U.S.C. § 1292(a)(1).

We also conclude that the order compelling appraisal and staying the action pending appraisal is not immediately appealable under the Federal Arbitration Act ("FAA").  Accordingly, for the reasons stated below, we dismiss the appeal for lack of appellate jurisdiction.

## I.    RELEVANT BACKGROUND[2]

Empire issued the Policy to Positano for five buildings owned by Positano in Naples, Florida (the "Insured Property"). The Policy has a total coverage value in the millions of dollars, and each of the buildings is separately scheduled and subject to a 3 percent hurricane deductible.  The Policy contains the following appraisal provision:

**Mediation Or Appraisal**
If we and you:

. . . .

**B.** Disagree on the value of the property or the amount of loss, either may request an appraisal of the loss, in writing. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction. The appraisers will state

---

[2] In these consolidated appeals, the facts, procedural histories, and arguments made below and on appeal are largely the same.  For purposes of this opinion, our discussion of the facts and procedural history focuses on those in *Positano Place at Naples I Condominium Association, Inc., v. Empire Indemnity Insurance Company*, No. 22-11059.

separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

However, you are not required to submit to, or participate in, any appraisal of the loss as a precondition to action against us for failure to pay the loss, if we:

1. Requested mediation and either party rejected the mediation result; or

2. Failed to notify you of your right to participate in the mediation program.

On September 10, 2017, Hurricane Irma struck Naples. Nearly seven months later, Positano notified Empire of storm damage to the Insured Property. Empire investigated the claim and inspected the Insured Property. Empire and Positano exchanged a series of letters relating to Positano's claim over a period of approximately three years. The details of those letters are not relevant to the issue before us. Suffice it to say that the parties disagreed about the amount of covered losses incurred by Positano as a result of Hurricane Irma.

At some point during this process, Positano sent a written request for appraisal to Empire. After Positano's appraisal request went unanswered, it filed a complaint against Empire in Florida

state court. Empire subsequently removed the action to the United States District Court for the Middle District of Florida on the basis of diversity jurisdiction. After its initial complaint was dismissed in part, Positano filed its amended complaint. In its amended complaint, Positano asserted three claims: (1) specific performance; (2) breach of contract; and (3) declaratory judgment. As to specific performance, Positano alleged that the Policy's appraisal provision demonstrated the parties' intention to have disputes related to causation, scope, and loss be resolved through the appraisal process upon either party's demand. It alleged that the parties' dispute was not a coverage dispute but a dispute over the amount of loss. As to the breach of contract claim, Positano alleged that Empire acknowledged loss and coverage but had failed to comply with its contractual obligations to engage in the appraisal process and had not paid in full for the covered losses suffered by Positano. And, as to the declaratory judgment claim, Positano asked the district court to declare, among other things, that it had "properly invoked the Policy's appraisal provision."

Empire's answer asserted nineteen affirmative defenses against Positano's claims. Many of these affirmative defenses are coverage defenses, and, at the time this appeal was filed, the district court had not issued any dispositive rulings as to those coverage defenses.

Positano then moved to compel appraisal and to stay the proceedings pending completion of appraisal. The district court referred the motion to compel to a magistrate judge. The

magistrate judge issued a report recommending that the district court grant Positano's motion, finding that Empire did not dispute Positano's assertion that a "dispute has arisen over the scope and amount of [its] damages" and that requiring the parties to engage in appraisal was therefore appropriate.

As relevant to this appeal, the magistrate judge rejected Empire's contention that "compelling appraisal is an injunctive remedy in the form of specific performance," which cannot be required because Positano failed to show entitlement to specific performance, and concluded that Positano was not required to plead and prove the elements of specific performance to compel appraisal because Florida case law suggested that methods of alternative dispute resolution, e.g., appraisal, should be employed when possible. The magistrate judge also rejected Empire's argument that appraisal could not be compelled absent a final determination about whether it breached the Policy's appraisal provision. The magistrate judge explained that, unlike summary judgment, an appraisal does not determine whether there is a genuine disputed material fact or there is entitlement to judgment and can be sought through breach of contract and declaratory judgment actions as a form of alternative dispute resolution.

The district court accepted and adopted the report and recommendation in full, and also provided additional analysis in its order. As relevant to this appeal, the district court addressed Empire's argument that Positano must first obtain judgment in its favor for specific performance before an appraisal could take place.

The district court explained that "[t]he problem for Empire—and for Positano in its attempt to plead a count for specific performance (as an alternative to its breach of contract and declaratory relief counts)—is that the appraisal process is not remedial." The district court noted that participation in the appraisal process would not remedy the damages caused by Hurricane Irma; it would simply be "one step in this process, supplying an extra-judicial mechanism to calculate the amount of loss." The district court stated that appraisal is a form of alternative dispute resolution and that its "source of authority to order the parties to participate in an alternative dispute process comes from its subject-matter jurisdiction over a contract dispute where the contract contains a provision where the parties contracted for the right to have amount-of-loss disputes decided informally by experienced appraisers." And the district court stated that appraisal would not dispose of any of the claims or defenses.

This appeal ensued. During this appeal, we issued a jurisdictional question to the parties asking them to address the basis of our jurisdiction to review the order compelling appraisal in this case as well as whether an order compelling appraisal is treated the same as an order compelling arbitration for purposes of appellate jurisdiction. Following the parties' briefing, we carried the jurisdictional issue with the case and now resolve it in this opinion.

## II.     STANDARD OF REVIEW

We review *de novo* an order granting a party's motion to compel appraisal. *See Jacobs v. Nationwide Mut. Fire Ins. Co.*, 236

F.3d 1282, 1285 (11th Cir. 2001).  We also review *de novo* our appellate jurisdiction.  *Thomas v. Phoebe Putney Health Sys., Inc.*, 972 F.3d 1195, 1200 (11th Cir. 2020).

## III.    ANALYSIS

"We have a duty to assure ourselves of our jurisdiction at all times in the appellate process."  *Id.* (quoting *Overlook Gardens Props., LLC v. ORIX USA, L.P.*, 927 F.3d 1194, 1198 (11th Cir. 2019)).  Therefore, before we can review the order compelling appraisal in this case, we must determine whether we have jurisdiction to do so.  *See World Fuel Corp. v. Geithner*, 568 F.3d 1345, 1348 (11th Cir. 2009).  For an order to be appealable, it "must either be final or fall into a specific class of interlocutory orders that are made appealable by statute or jurisprudential exception."  *CSX Transp., Inc. v. City of Garden City*, 235 F.3d 1325, 1327 (11th Cir. 2000); *see* 28 U.S.C. §§ 1291–92.  Title 28 U.S.C. § 1291 provides us with appellate jurisdiction of final decisions of the district courts, while § 1292 provides for review of certain classes of interlocutory orders.  Additionally, for an order disposing of a request to compel arbitration, the FAA governs the appealability of such an order. *Am. Express Fin. Advisors, Inc. v. Makarewicz*, 122 F.3d 936, 939 (11th Cir. 1997).

We begin our analysis by addressing whether we have appellate jurisdiction under either 28 U.S.C. § 1291 or 28 U.S.C. § 1292.  We then explain why we do not have appellate jurisdiction under the FAA.

### A.  Whether the Order Compelling Appraisal Is Appealable Under 28 US.C. §§ 1291 or 1292(a)

Under § 1291, the federal courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts of the United States."  "A final decision is 'one which ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"  *CSX Transp.*, 235 F.3d at 1327 (quoting *Pitney Bowes, Inc. v. Mestre*, 701 F.2d 1365, 1368 (11th Cir. 1983)).  When "a district court anticipates that further proceedings on substantive matters may be required, any order it makes to facilitate those further proceedings is necessarily not final."  *Broussard v. Lippman*, 643 F.2d 1131, 1133 (5th Cir. Unit A Apr. 1981).[3]

Here, we conclude that the order compelling appraisal in this case is not a final order appealable under § 1291.  In its order, the district court explicitly contemplated further proceedings, explaining that the appraisal would not dispose of any of the claims in the case nor Empire's coverage defenses.  Further, in Florida, "[a]ppraisal exists for a limited purpose—the determination of 'the amount of the loss.'"  *Citizens Prop. Ins. Corp. v. Mango Hill #6 Condo. Ass'n, Inc.*, 117 So. 3d 1226, 1230 (Fla. Dist. Ct. App. 2013).  "[A]n agreement for appraisal extends merely to the resolution of the specific issues of actual cash value and 'amount of loss,'" and

---

[3] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981.

"all issues other than those contractually assigned to the appraisal panel are reserved for determination in a plenary action." *Id.* at 1229. And notably, Florida courts do not consider an order compelling appraisal to be a final order. *See, e.g.*, *People's Tr. Ins. Co. v. Garcia*, 263 So. 3d 231, 233 (Fla. Dist. Ct. App. 2019); *see also* Fla. R. App. 9.130(a)(3)(C)(iv) ("Appeals to the district courts of appeal of nonfinal orders are limited to those that . . . determine . . . the entitlement of a party to . . . an appraisal under an insurance policy."). Thus, we do not have appellate jurisdiction to review the order compelling appraisal under § 1291, as it is not a final order.

Because the order compelling appraisal is not a final order appealable under § 1291, we now turn to the question of whether it falls within one of the classes of appealable, interlocutory orders under § 1292. In doing so, we are mindful that "interlocutory appeals are inherently "disruptive, time-consuming, and expensive," and thus "are generally disfavored." *Prado-Steiman ex rel. Prado v. Bush*, 221 F.3d 1266, 1276 (11th Cir. 2000) (quoting *Waste Mgmt. Holdings, Inc. v. Mowbray,* 208 F.3d 288, 294 (1st Cir. 2000)).

Section 1292(a) creates a narrow exception from the "long-established policy against piecemeal appeals." *Gardner v. Westinghouse Broad. Co.*, 437 U.S. 478, 480 (1978). Under that statute, the courts of appeals have appellate jurisdiction over certain classes of interlocutory orders, including interlocutory orders "granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions." § 1292(a)(1). In *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271 (1988), the

Supreme Court explained that § 1292(a)(1) provides appellate juris-diction over "orders that grant or deny injunctions and orders that have the practical effect of granting or denying injunctions and have 'serious, perhaps irreparable, consequence.'" *Id.* at 287–88 (quoting *Carson v. Am. Brands, Inc.*, 450 U.S. 79, 84 (1981)); *accord Carson*, 450 U.S. at 84 ("Unless a litigant can show that an interloc-utory order . . . might have a 'serious, perhaps irreparable, conse-quence,' and . . . can be 'effectually challenged' only by immediate appeal, the general congressional policy against piecemeal review will preclude interlocutory appeal."); *Admin. Mgmt. Servs., Ltd. v. Royal Am. Managers, Inc.*, 854 F.2d 1272, 1278–79 (11th Cir. 1988). In *United States v. City of Hialeah*, 140 F.3d 968 (11th Cir. 1998), we summarized the requirements laid out in *Carson* and *Gulf-stream* for appellate jurisdiction of an interlocutory order under § 1292(a)(1) as follows: (1) "if the relief sought is not actually an in-junction, then it must have the practical effect of an injunction"; and (2) "the appellant must show that the interlocutory order of the district court 'might have a serious, perhaps irreparable, conse-quence, and that the order can be effectually challenged only by immediate appeal.'" *Id.* at 973 (quoting *Carson*, 450 U.S. at 84); *accord Roberts v. St. Regis Paper Co.*, 653 F.2d 166, 170 (5th Cir. Unit B Aug. 1981); *United States v. Bowman*, 341 F.3d 1228 (11th Cir. 2003). Thus, "[i]f relief may be obtained upon review after

trial, the parties are not considered to have suffered irreparable consequences."[4] *Admin. Mgmt. Servs.*, 854 F.2d at 1279.

We have not decided the issue of whether an order that only compels appraisal, and stays the proceedings pending the appraisal process, is appealable under § 1292(a)(1). Although Empire argues that the district court's order here was an injunction, we need not reach that question because two requirements—being an injunction or injunction-like and having "serious, perhaps irreparable, consequence" such that the order is effectively challengeable "only by immediate appeal"—must be satisfied for an order to be appealable under § 1292(a)(1). *See City of Hialeah*, 140 F.3d at 973. And applying those requirements, we conclude that neither component of *City of Hialeah*'s second requirement is satisfied by the order compelling appraisal in this case. Indeed, the appraisal order does

---

[4] We note that, in *Alabama v. U.S. Army Corps of Engineers*, 424 F.3d 1117 (11th Cir. 2005), we held that, to be appealable under § 1292(a)(1), "the interlocutory order appealed must have the first two element of an injunction," i.e., "it must be: (1) a clearly defined and understandable directive by the court to act or to refrain from a particular action; and (2) enforceable through contempt, if disobeyed." *Id.* at 1128. We also stated that the order must give "some or all of the substantive relief sought in the complaint" and that "[t]he § 1292(a)(1) exception [to the final judgment rule] does not embrace orders that have no direct or irreparable impact on the merits of the controversy." *Id.* at 1128–29 (alterations in original) (quoting *Gardner*, 437 U.S. at 482). Because we ultimately conclude that the district court's interlocutory order compelling appraisal and staying the proceedings does not satisfy all the requirements in *Administrative Management Services* and *City of Hialeah*, we need not address any of the additional requirements stated in *U.S. Army Corps*.

not have some "serious, perhaps irreparable consequence." *See id.* The district court's order does *not* entitle Positano to judgment on its claims against Empire. And while the appraisal process is binding on the parties as to the *amount* of the loss, Empire can still pursue its defenses of coverage denials as a whole and to specific buildings owned by Positano in the district court once the appraisal process concludes. *See State Farm Fire & Cas. Co. v. Licea*, 685 So. 2d 1285, 1287–88 (Fla. 1996). And if Empire is unsuccessful in the district court following the conclusion of the appraisal proceedings, it can still obtain relief upon review after trial by appealing any final judgment against it—meaning that the order is not effectively challengeable only by immediate appeal.[5]   *See Admin. Mgmt. Servs.,*

---

[5] We respectfully disagree with our dissenting colleague that the *City of Hialeah* requirements are limited only to interlocutory orders denying an injunction or injunction-like relief. *See* Dis. Op. at 7–9. First, our precedent in *City of Hialeah* did not make such a distinction in setting forth the requirements. *See City of Hialeah*, 140 F.3d at 973. Additionally, the Supreme Court, in concluding that an "analogous" provision to § 1292(a)(1)—28 U.S.C. § 1253—encompassed orders with the "practical effect" of granting or denying an injunction, rejected the appellees' argument that "an order denying an injunction (the situation in *Carson*) and an order granting an injunction (the situation here) should be treated differently." *Abbot v. Perez*, 138 S. Ct. 2305, 2320–21 (2018). The Supreme Court noted that, not only did the appellees "offer no convincing reason for" drawing such a distinction, "[n]o authority supports their argument." *Id.* at 2321. The Court explained that "[t]he language of §§ 1253 and 1292(a)(1) makes no such distinction" and that "the 'practical effect' analysis applies to the 'granting or denying' of injunctions." *Id.* (citing *Gulfstream*, 485 U.S. at 287–88). The Court also reasoned that "appellees' suggested distinction would put appellate courts in an awkward position . . . [and] needlessly complicate appellate review." *Id.* The Court's reasoning in *Abbott*

854 F.2d at 1279 ("If relief may be obtained upon review after trial, the parties are not considered to have suffered irreparable consequences."); *see also Bowman*, 431 F.3d at 1237 ("What makes an issue *effectively* unreviewable on appeal is the insufficiency of the remedy after final judgment." (quoting *United States v. One Parcel of Real Prop. With Bldgs., Appurtenances & Improvements*, 767 F.2d 1495, 1497 (11th Cir. 1985))).

While Empire raises out-of-circuit authority to argue that the order compelling appraisal is rooted in an action for specific performance of a contract that is treated as an injunction, *see, e.g.*, *Westar Energy, Inc. v. Lake*, 552 F.3d 1215, 1222–23 (10th Cir. 2009); *Hayes v. Allstate Ins. Co.*, 722 F.2d 1332, 1333 (7th Cir. 1983), we do not find those cases persuasive here. In *Westar Energy*, the Tenth Circuit found that the district court's order, in which the court ordered the appellant to pay the appellee's legal expenses and expressly invoked its equitable powers, was a preliminary injunction. 552 F.3d at 1222. The Tenth Circuit stated that "[a]n action seeking to enforce the right to advancement [of legal fees] is an action for specific performance of a contract," that specific

thus supports our conclusion that the *City of Hialeah* requirements are not limited to interlocutory orders denying an injunction or injunction-like relief.

Moreover, we are bound to follow our prior binding precedent unless and until it is overruled by this Court en banc or the Supreme Court. *United States v. Vega-Castillo*, 540 F.3d 1235, 1236 (11th Cir. 2008). We therefore are bound to apply the *City of Hialeah* requirements in determining whether we can review the order granting the motion to compel appraisal in this case.

performance "is an equitable remedy," and that "an interim grant of specific relief is a preliminary injunction." *Id.* at 1222–23. And the Tenth Circuit declined to apply *Carson*'s "serious, perhaps irreparable, consequence" requirement because it construed that requirement as applying only "in situations where orders have the practical effect of denying an injunction." *Id.* at 1223 ("[O]rders which themselves grant or deny injunctive relief are appealable as injunctions under 28 U.S.C. § 1292(a)(1) without the *Carson* showing." (citing *Hutchinson v. Pfeil*, 105 F.3d 566, 569 (10th Cir. 1997))).

But unlike *Westar Energy*, the district court in this case did not order appraisal based on its "equitable powers." Moreover, the "relief" granted by the district court was not enforcement of a right to advancement of fees but an order sending the parties to a contractually-anticipated alternative dispute resolution process that would not dispose of the underlying claims or defenses in the case. Further, to the extent the Tenth Circuit declined to apply *Carson*'s "serious, perhaps irreparable, consequence" requirement to the order in *Westar Energy* because it was substantively a preliminary injunction, *see id.*, we are bound, by *City of Hialeah*, to apply the "serious, perhaps irreparable, consequence" requirement even if we conclude that the district court's order here was an actual injunction. *See City of Hialeah*, 140 F.3d at 973 (identifying "serious, perhaps irreparable consequence" as requirement in addition to

22-11059                Opinion of the Court                17

order being injunction or injunction-like). Thus, we do not find *Westar Energy* dispositive here.[6]

Additionally, in *Hayes*, the Seventh Circuit provided no analysis of why it had appellate jurisdiction under § 1292(a)(1) to review the order; the court simply concluded that it did. 722 F.2d at 1333. Given the lack of jurisdictional analysis by the Seventh Circuit, we decline to follow *Hayes*. And notably, Judge Posner dissented in *Hayes* on the basis that there was no jurisdiction to hear an interlocutory appeal of an order compelling appraisal. *See id.* at 1336 (Posner, J., dissenting). In doing so, Judge Posner specifically noted that there was no possibility of irreparable harm from the district court's order because any delay to the plaintiffs' lawsuit while appraisal was ongoing "would be trivial, and certainly could not harm them irreparably." *Id.* at 1336–37 (citing *Carson*, 450 U.S. at 84). And, if the plaintiffs disagreed with the results of the appraisal, "they could—just as soon as the district court entered its final judgment on the basis of the appraisal—file the same appeal they have filed from the stay; and if we then reversed the district court's judgment the appraisal would have caused the plaintiffs no harm at all." *Id.* We agree with Judge Posner's characterization of the lack of irreparable harm to a party that is ordered to

---

[6] For the same reason, we must also reject the unpublished decision of *Fireman's Fund Insurance Co. v. Steele Street Ltd. II*, in which the Tenth Circuit applied *Westar Energy* to conclude that it had jurisdiction over an order enforcing an insurance policy's appraisal provision under § 1292(a)(1), No. 19-1096, 2022 WL 39392, at *4 (10th Cir. Jan. 5, 2022).

appraisal. And, under *City of Hialeah*, some serious or irreparable consequence is required for an interlocutory order to be appealable under the injunction analogy theory. 140 F.3d at 973. Simply put, an interlocutory order compelling appraisal does not implicate such serious or irreparable consequence to a party as to satisfy *City of Hialeah*'s requirements.

As a final note, we recognize that Florida courts do not require a party seeking to enforce an appraisal provision in an insurance policy to file a motion for injunctive relief. *See People's Tr. Ins. Co. v. Nowroozpour*, 277 So. 3d 135, 136 (Fla. Dist. Ct. App. 2019) ("After a homeowner has filed suit, it may be more traditional for an insurer to move to compel an appraisal to seek enforcement of the policy provisions . . . ."); *see, e.g., People's Tr. Ins. Co. v. Marzouka*, 320 So. 3d 945 (Fla. Dist. Ct. App. 2021); *First Protective Ins. Co. v. Colucciello*, 276 So. 3d 456 (Fla. Dist. Ct. App. 2019); *People's Tr. Ins. Co. v. Tracey*, 251 So.3d 931 (Fla. Dist. Ct. App. 2018). Florida courts grant motions to compel appraisal when "the parties have agreed to [appraisal] and the court entertains no doubts that such an agreement was made." *Marzouka*, 320 So. 3d at 947–48 (emphasis removed) (quoting *Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d 1101, 1103 (Fla. Dist. Ct. App. 1994)).

Accordingly, because the district court's interlocutory order compelling appraisal and staying the proceedings does not satisfy all the requirements set forth by our decisions in *Administrative Management Services* and *City of Hialeah*, it is not appealable

under § 1292(a)(1).  We therefore lack appellate jurisdiction to review the order.

### B.  Whether an Order Compelling Appraisal Is Appealable Under the FAA

We now turn to the issue of whether the order compelling appraisal in this case—which was ordered based on an appraisal provision in an insurance policy—is appealable under the FAA. The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The FAA governs the appealability of an order ruling on a motion to compel arbitration.  Under 9 U.S.C. § 16(a)(3), an appeal may be taken from "a final decision with respect to an arbitration."  Conversely, under § 16(b)(1) and (3), an appeal may not be taken from an interlocutory order that grants a stay of any action under 9 U.S.C. § 3—providing for stays of proceedings where an issue in the suit is referable to arbitration—or that compels arbitration under 9 U.S.C. § 206.

Federal policy behind the FAA favors arbitration agreements, *Wasyl, Inc. v. First Bos. Corp.*, 813 F.2d 1579, 1582 (9th Cir. 1987), and the FAA creates a "body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983).  But Congress did not define

the term "arbitration" in the FAA. *Salt Lake Trib. Publ'g Co. v. Mgmt. Plan., Inc.*, 390 F.3d 684, 688 (10th Cir. 2004).

Here, we are presented with an order granting a party's motion to compel appraisal based on an appraisal provision in an insurance policy. We have not decided the question of whether an appellate court looks to state or federal law in determining whether an appraisal process falls within the definition of "arbitration" for purposes of the FAA, nor has the Supreme Court directly addressed the question. *But see Advanced Bodycare Sols., LLC v. Thione Int'l, Inc.*, 524 F.3d 1235, 1239–40 (11th Cir. 2008) (articulating "a test for resolving whether a particular dispute resolution procedure is FAA 'arbitration'").

But we need not decide this issue because even assuming for the sake of argument that the order compelling appraisal here fell within the definition of arbitration for purposes of the FAA, we still lack appellate jurisdiction over the district court's order. Section 16(a)(3) allows for an appeal from "a final decision with respect to an arbitration that is subject to this title" and is interpreted "according to the 'well-developed and longstanding meaning' of a 'final decision.'" *Managed Care Advisory Grp., LLC v. CIGNA Healthcare, Inc.*, 939 F.3d 1145, 1154 (11th Cir. 2019) (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 86 (2000)). And "[a] final decision 'ends the litigation on the merits and leaves nothing more for the court to do but execute the judgment.'" *Id.* (quoting *Green Tree*, 531 U.S. at 86). For the reasons explained above, the district court's order compelling appraisal and staying the case pending

22-11059                Opinion of the Court                21

appraisal is not a final decision.  And because § 16(b)(3) specifically states that "an appeal may not be taken from an interlocutory order . . . compelling arbitration"—and § 16(b)(1) likewise makes "an interlocutory order . . . granting a stay" pending referral of arbitrable issues to arbitration not immediately appealable—we lack appellate jurisdiction over the order compelling appraisal even if appraisal were to be considered arbitration for purposes of the FAA.

## IV.   CONCLUSION

For the reasons discussed, we conclude that the district court's order compelling appraisal and staying the proceedings pending appraisal is an interlocutory order that is not immediately appealable under either 28 U.S.C. § 1292(a)(1) or the Federal Arbitration Act.  We therefore dismiss the appeal for lack of appellate jurisdiction.

**APPEAL DISMISSED.**

22-11059                TJOFLAT, J., Dissenting                1

TJOFLAT, Circuit Judge, dissenting:

## I.

### A.

I dissent from the Majority's disposition of this consolidated appeal. We have jurisdiction under 28 U.S.C. § 1292(a)(1) if the District Court order requiring Empire to submit to an appraisal as prescribed by the insurance policy with the insured[1] is (1) interlocutory and (2) grants an injunction.[2]

Certainly, the District Court's order to compel an appraisal is an interlocutory order since the District Court stayed proceedings in anticipation of ongoing litigation on this matter rather than dismissing the case. We are halfway to 28 U.S.C. § 1292(a)(1) jurisdiction.

The District Court's order to compel an appraisal is also a grant of an injunction. It is immaterial that the complaint did not

---

[1] I refer to the insured in the singular throughout this opinion, but all four of the plaintiffs in the consolidated cases are situated similarly.

[2] According to 28 U.S.C. § 1292(a)(1),

> Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from [i]nterlocutory orders of the district courts . . . granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court.

28 U.S.C. § 1292(a)(1).

2                    TJOFLAT, J., Dissenting                    22-11059

seek the injunction the District Court granted.  The point is that the District Court granted one.  That is what the District Court *did*. *See Gov't Emps. Ins. Co. v. Glassco, Inc.*, 58 F.4th 1338, 1345 (11th Cir. 2023) (per curiam) (stating that in deciding the finality of a district court order, we must look to what the district court *did*, not focus on labels).

The District Court's order is an injunction because (1) it commanded Empire to do something (engage in an appraisal) and (2) it is enforceable under the District Court's inherent civil contempt power.  *See Nken v. Holder*, 556 U.S. 418, 428, 129 S. Ct. 1749, 1757 (2009) ("[An injunction] is a means by which a court tells someone what to do or not to do.  When a court employs 'the extraordinary remedy of injunction,' . . . it directs the conduct of a party, and does so with the backing of its full coercive powers" (quoting *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312, 102 S. Ct. 1798, 1803 (1982)); *Alabama v. U.S. Army Corps of Eng'rs*, 424 F.3d 1117, 1128 (11th Cir. 2005) (defining an injunction as "(1) a clearly defined and understandable directive by the court to act or refrain from a particular action; and (2) enforceable through contempt, if disobeyed"); *Injunction*, Black's Law Dictionary (7th ed. 1999) (defining "injunction" as "[a] court order commanding or preventing an action"); Joseph Story, 2 Commentaries on Equity Jurisprudence § 861 p. 57 (9th ed. 1866) ("A Writ of Injunction may be described to be a judicial process, whereby a party is required to do a particular thing, or to refrain from doing a particular thing, according to the exigency of the writ."); 1 Howard C. Joyce, A Treatise on the Law Relating to Injunctions § 1, p. 2 (1909) ("In a general

22-11059                TJOFLAT, J., Dissenting                3

sense, every order of a court which commands or forbids is an injunction; but in its accepted legal sense, an injunction is a judicial process or mandate operating *in personam* by which, upon certain established principles of equity, a party is required to do or refrain from doing a particular thing.").

Here, the District Court ordered Empire to engage in an appraisal with the insured. The consequence of this order would be to bar Empire from trying the loss issue to the jury on the basis of the appraisal result rather than on the evidence of the loss the parties would submit at a trial. That satisfies one element of an injunction.[3] The District Court's order is also enforceable by the Court's inherent civil contempt power. How could it not be?

If Empire refused to engage in an appraisal, the insured would move the District Court for an order requiring Empire to show cause why it refuses to engage in an appraisal. The motion would cite the injunctive order and allege that Empire refused to engage in the appraisal. Accepting the allegation as true, the District Court would enter an order requiring Empire to show cause for its refusal to engage in an appraisal. At the show-cause hearing, Empire would have to show a legal excuse for its refusal to obey the injunction's mandate or face a contempt adjudication and a

---

[3] The injunction is permanent in the sense that the District Court did not reserve further question on the applicability of the appraisal provision for later decision. This order compelling an appraisal is the Court's final word on the appraisal provision question.

sanction for its refusal (probably a fine which would continue to be imposed daily until Empire complied with the injunctive order).

If Empire failed to show legal cause and a sanction was imposed, Empire would have two choices: (1) it could comply with the injunction and purge its contempt or (2) appeal the judgment adjudicating the contempt and imposing a sanction to the Court of Appeals under 28 U.S.C. § 1291.[4]

*B.*

The Majority says, "if Empire is unsuccessful in the district court following the conclusion of the appraisal proceedings, it can still obtain relief upon review after trial by appealing any final judgment against it." Maj. Op. at 14. But Empire could not. This becomes clear when we consider the choices that await Empire on remand—the two choices mentioned above. I submit that Empire will never obtain review unless it defies the order compelling an appraisal and is held in contempt. What I say next explains why.

One of Empire's choices is that it can comply with the injunction's command and, after the appraisal process has run its course, proceed to trial before a jury. At trial, the appraisal will be introduced into evidence as fixing the loss. Empire will not introduce any evidence of loss; that is the result of the District Court's

---

[4] The text of 28 U.S.C. § 1291 states, "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except where a direct review may be had in the Supreme Court." 28 U.S.C. § 1291.

injunction. The injunction required Empire to engage in an appraisal, and it deprived Empire of the right to have the jury determine the loss issue on the basis of evidence produced by the parties.

The other choice Empire faces is that it can obtain appellate review of the District Court's injunctive order by refusing to engage in an appraisal and suffering a contempt citation and judgment. The judgment would be appealable under § 1291 and would provide Empire the review it now seeks under § 1292(a)(1). Why would Empire run the contempt route? It would take no additional work. Empire has already written its brief on the merits of the underlying order and it could be replicated in appealing the contempt on the basis of the underlying order.

The choice Empire makes between these two options will depend on the extent to which Empire believes that not engaging in an appraisal and trying the loss issue to a jury (sans appraisal determination of loss) would be more beneficial than engaging in an appraisal and allowing the appraisal to fix the loss at trial. What this means is that Empire will decide as a matter of choice whether it will *ever* be able to obtain appellate review of its challenge to the District Court's injunctive order. If Empire suffers a contempt adjudication, it will obtain review under § 1291. If it chooses to comply with the injunctive order—engages in an appraisal and goes to trial with the loss issue resolved by the appraisal rather than a jury—and suffers an adverse judgment following a trial, it will not be able to assign the District Court's issuance of the injunctive order as error. Empire would have made an uncoerced choice and

opted not to have immediate appellate review, but rather to proceed to trial with a loss amount fixed by an appraisal.

There is another reason Empire will not be able to obtain appellate review of the order compelling an appraisal if it chooses to comply with the order and engage in an appraisal. To enable the review at that point would give Empire the best of both worlds. If Empire's choice to go to trial with the amount of loss fixed by an appraisal does not pan out, Empire can appeal and obtain a jury trial on loss.

Such an outcome has a number of troubling consequences. First, we all but eliminate 28 U.S.C. § 1292(a)(1) as a means of obtaining appellate review of an interlocutory order *granting* an injunction. Second, we signal to litigants who oppose the issuance of an injunction and want appellate review to defy the injunction's mandate, suffer a contempt adjudication, and appeal the judgment under § 1291. This signal (1) encourages disrespect for the rule of law; (2) sets the stage for litigants to regularly suffer the stain of a contempt citation; and (3) wastes judicial resources by requiring an extra procedural step.

## II.

Now, let us put the previous discussion aside and focus on what the Majority does.

The Majority punts on answering whether the District Court's order is an injunction because the Majority utilizes a two-pronged test to determine the appealability of the injunctive order under § 1292(a)(1) that reaches beyond the statute's text. Maj. Op.

22-11059               TJOFLAT, J., Dissenting               7

at 13.  The Majority must acknowledge that the order Empire is currently appealing is an injunction.  What it says, therefore, is that although the interlocutory order *compels* Empire to act (and is enforceable by the contempt power), the order is unappealable under § 1292(a)(1) because to qualify as an injunction under § 1292(a)(1), the injunctive *order* itself—in addition to causing a party such as Empire to act or be held in contempt—must impose upon the party a "serious, perhaps irreparable consequence."  *Id.* at 12.  How the order issuing the injunction would show that, and why it would have to do so, the Majority does not say.  And what that consequence would be escapes me altogether.  Nonetheless, because the injunction does not show that, the Majority dismisses this appeal for lack of jurisdiction.  *Id.* at 21.

The cases the Majority cites do not change our preceding analysis.  The Majority cites to five cases that regard a denial of an injunction; this is a far different breed of case.[5]  *See Carson v. Am. Brands, Inc.*, 450 U.S. 79, 101 S. Ct. 993 (1981); *United States v. City*

---

[5] Other than the denial cases, the Majority only cites to one other case for the proposition that Empire must also satisfy a "serious, perhaps irreparable consequence" requirement prior to this Court finding jurisdiction.  *United States v. Bowman*, 341 F.3d 1228 (11th Cir. 2003).

*Bowman* is completely inapposite.  In *Bowman*, the appellants did not challenge an injunction, they challenged an "ex parte seizure."  *Id.* at 1229.  The challenged order also derived from an in rem civil action.  *See supra* part I.A (describing an injunction traditionally as an in personam order).  Therefore, *Bowman* also has nothing to say about the instant case, which is an appeal of a granted injunction.

8                    TJOFLAT, J., Dissenting                    22-11059

*of Hialeah*, 140 F.3d 968 (11th Cir. 1998); *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S. Ct. 1133 (1988); *Admin. Mgmt. Servs., Ltd. v. Royal Am. Managers, Inc.*, 854 F.2d 1272 (11th Cir. 1988); *Roberts v. St. Regis Paper Co.*, 653 F.2d 166 (5th Cir. Unit B Aug. 10, 1981).[6]  To appeal an *interlocutory* order *granting* an injunction, the appellant needs only the language of the injunction—language indicating that the injunction (1) compels an action or restraint from taking an action and (2) is capable of enforcement via contempt.

In appealing an *interlocutory* order *denying* an injunction, the appellant must include as record its application for the injunction—so the appellate court can know that it seeks an injunction enforceable via contempt—and the district court's order presumably addressing the application in full.  This difference explains the "serious, perhaps irreparable consequence" language in *Carson*, *City of Hialeah*, *Gulfstream*, *Royal American*, and *Roberts*, and that language does not apply to the appeal of a *granted* injunction.[7]

---

[6] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this Court adopted as binding precedent all decisions of the former Fifth Circuit handed down before the close of business on September 30, 1981.

[7] The Majority points to *Abbot v. Perez* for the proposition that the Supreme Court has said the granting and the denying of an injunction ought not to be treated differently.  138 S. Ct. 2305, 2320–21 (2018); Maj. Op. at 14–15 n.5.  But once again, this case is inapposite.  The discussion from which the Majority pulls that proposition does not discuss the "serious, perhaps irreparable consequence" prong from *Carson*.  Rather, the Supreme Court says that orders denying injunctions and granting injunctions ought not to be treated

22-11059          TJOFLAT, J., Dissenting          9

Additionally, the legal consequence of declining to review the interlocutory *denial* of an injunction is different.  One, the denial is tentative and provisional, subject to subsequent reconsideration by the district court.  Two, the movant can obtain review of the application under § 1291 if the denial remains to become final.  Three, the movant cannot obtain review of its denied application through the contempt choice (that Empire will have) because a *denial* of an injunction is not enforceable by the court's contempt power.  That would be nonsensical.

★                    ★                    ★

It seems to me that, as a policy matter, there exists a desire not to hear interlocutory appeals, but rather to keep reviewable issues out of the appellate courts as a prophylactic matter so litigation can continue until the end.  I understand that the finality requirement of 28 U.S.C. § 1291 rests on the policy justification of avoiding "piecemeal reviews" and "obstructing or impeding an ongoing judicial proceeding by interlocutory appeals," thus promoting "judicial efficiency and hasten[ing] the ultimate termination of litigation."  *United States v. Nixon*, 418 U.S. 683, 690, 94 S. Ct. 3090, 3099 (1974).  But 28 U.S.C. § 1292(a)(1) provides an exception to § 1291 and specifically applies to the kind of order—a granted

---

differently when deciding whether the order on appeal has the "practical effect" of an injunction—a different piece of the *Carson* analysis. *Id.* at 2319–21.  The Majority and I do not quibble over this point.  We disagree over the introduction of a "serious, perhaps irreparable consequence" requirement, a point on which *Perez* says nothing.

injunction—we have before us here. Further, hearing this appeal serves the efficiency-based policy interests that normally militate against appellate courts finding appellate jurisdiction for the reasons outlined in this opinion. Under the Majority's framing, inefficiency will flourish. Empire could be in this Court three times: now, after judgment, and maybe after the retrial.

I therefore dissent because I would hold that we have jurisdiction over this consolidated appeal of the District Court's order granting an injunction under 28 U.S.C. § 1292(a)(1).